UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Covil Corporation By Its Duly Appointed, Receiver, Peter D. Protopapas, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| | ) | |
| Zurich American Insurance Company; Sentry Casualty Company; United States Fidelity and Guaranty Company; TIG Insurance Company, As Successor in Interest to Fairmont Specialty Insurance Company, F/K/A Ranger Insurance Company; Hartford Accident And Indemnity Company; First State Insurance Company; Timothy W. Howe, Personal Representative Of Wayne Erwin Howe; Jeannette Howe; Jerry Crawford; Denver Taylor And Janice Taylor; and James Coleman Sizemore, Personal Representative Of James Calvin Sizemore, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 7:18-3291-BHH<br><br><br>**OPINION AND ORDER** |
| Defendants. | ) ) ) | |
| ———————————————— | ) | |

     This matter is before the Court for review of Defendant Sentry Insurance a Mutual Company's (incorrectly identified as "Sentry Casualty Company;" hereinafter, "Sentry") Motion to Realign the Co-Defendants (ECF No. 4), and Plaintiff Covil Corporation's (hereinafter, "Covil") Motion to Remand (ECF No. 12). For the reasons set forth in this Order, Sentry's Motion to Realign is granted, and Covil's Motion to Remand is denied.

**BACKGROUND**

     On November 27, 2018, Covil, by its duly appointed receiver, Peter D. Protopapas

("Receiver"), filed a Complaint against Sentry, Zurich American Insurance Company ("Zurich"), United States Fidelity and Guaranty Company ("USF&G"), TIG Insurance Company ("TIG"), Hartford Accident and Indemnity Company ("Hartford"), and First State Insurance Company ("First State") (collectively "Carrier Defendants"), seeking declaratory relief in the Spartanburg County Court of Common Pleas. Covil, a now defunct company, alleges that it is the subject of multiple claims and/or law suits arising out of its role as an installer of thermal insulation which contained asbestos, such installations having taken place from approximately 1964 until 1986. (Compl. ¶ 1, ECF Nos. 1-1 & 1-2.) Count I of the Complaint alleges a breach of contract against Zurich, Sentry, and USF&G—which collectively controlled Covil's defense in an underlying wrongful death suit ("*Finch* suit")— for their declination to resolve the suit within policy limits, despite the opportunity to do so, resulting in a verdict entered against Covil in October 2018 in the amount of $32,700,000, plus $5,633,358.89 in pre-judgment interest. (*Id.* ¶¶ 43–50.) Count II alleges bad faith against Zurich and USF&G for failing or refusing to resolve the *Finch* suit within their policy limits, for allowing Covil to receive an adverse verdict of $32,700,000 in the *Finch* suit, and for failing to protect the interests of Covil and its claimants and creditors. (*Id.* ¶¶ 51–54.) Count III seeks declaratory judgments against Sentry, Zurich, USF&G, TIG and Hartford, that their relevant general liability and umbrella policies ("Covil Insurance Policies") provide coverage for the respective policy periods, and that such coverage encompasses all asbestos suits against Covil that allege bodily injury, personal injury, injurious exposure, progression of injury and/or disease, manifestation of illness, or death during the policy periods, including both a duty to defend and a duty to indemnify. (*Id.* ¶¶ 55–66.) Count IV seeks declaratory judgments against Timothy W. Howe, personal

representative of Wayne Erwin Howe, Jeannette Howe, Jerry Crawford, Denver and Janice Taylor, and James Coleman Sizemore, personal representative of James Calvin Sizemore (collectively, "Individual Defendants" or "Non-Diverse Defendants"), each of whom had or have asbestos related claims against Covil ("underlying actions"). (*Id.* ¶¶ 67–70.) In light of the $32,700,000 verdict in the *Finch* suit, and in light of the fact that the Covil Insurance Policies allegedly are the only assets of Covil available to pay for asbestos suits, Covil seeks a declaration and order:

> [T]hat certain rights and interests of the individually-named defendants be limited and curtailed as follows: (i) that any judgment obtained against Covil in a Covil asbestos suit be limited to all sums that may be collected from defendants Zurich, Sentry, USF&G, TIG and Hartford, individually or collectively; (ii) that punitive or exemplary damages are not awardable against the Receiver or the Receiver acting on behalf of Covil pursuant to South Carolina Code § 15-65-10; and (iii) that any judgment obtained against Covil that is or may be subject to an aggregate limit of any insurance policy or policies issued to Covil must fairly and equitably take into account such other judgments that may be outstanding at the time of such judgment.

(*Id.* ¶ 70.) Count V seeks an anti-suit injunction against Zurich, which brought a parallel declaratory judgment action in United States District Court for the Middle District of North Carolina. (*Id.* ¶¶ 71–76.) Covil alleges that Zurich brought the parallel action in an effort to truncate and limit the rights and powers of the Receiver, and to impair or impede the rights of the Individual Defendants and all other claimants, known and unknown, against Covil, as well as the rights of the Receiver. (*Id.* ¶ 72.) Covil further asserts that the issuance of an antisuit injunction is necessary and appropriate so that Covil may ascertain the parties' rights and obligations under the Covil Insurance Policies in this action, which is more comprehensive than the parallel action, and in order to obviate a multiplicity of actions which would otherwise result from allowing duplicative litigation involving the same issues and the same parties to proceed simultaneously. (*Id.* ¶¶ 73–76.)

Sentry removed the action to this Court on December 6, 2018. (ECF No. 1.) In its contemporaneously filed Motion to Realign the Co-Defendants, Sentry petitions the Court to realign the Non-Diverse Defendants with Covil as plaintiffs in this action, which would leave only the Carrier Defendants as defendants to the action, thereby creating complete diversity. (*See* ECF No. 4.) On December 20, 2018, Covil filed an Opposition to the Motion to Realign (ECF No. 11) and a Motion to Remand (ECF No. 12) the matter to state court. The Individual Defendants filed Oppositions to the Motion to Realign (ECF Nos. 21, 22, 23) on December 26, 2018. Sentry and Zurich filed Replies in Support of the Motion to Realign (ECF Nos. 25 & 26) on January 7, 2019. On January 14, 2019, Sentry and Zurich/TIG filed Oppositions to the Motion to Remand (ECF Nos. 32 & 33). On January 22 and 24, 2019 respectively, Covil and the Individual Defendants filed Replies in Support of the Motion to Remand (ECF Nos. 45 & 49). Both motions are ripe for consideration and the Court now issues the following ruling.

## DISCUSSION

### A. Motion to Realign Co-Defendants

The United States Supreme Court has stated, with regard to realignment of parties in a diversity action:

> To sustain diversity jurisdiction there must exist an actual, substantial controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side. Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants. It is our duty, as it is that of the lower federal courts, to look beyond the pleadings and arrange the parties according to their sides in the dispute. Litigation is the pursuit of practical ends, not a game of chess. Whether the necessary collision of interests exists, is therefore not to be determined by mechanical rules. It must be ascertained from the *principal purpose* of the suit and the primary and controlling matter in dispute.

*Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69 (1941) (emphasis added) (citations and internal quotation marks omitted). The Fourth Circuit has adopted the "principal purpose test" for evaluating how parties should be aligned:

> Application of the principal purpose test entails two steps. First, the court must determine the primary issue in the controversy. Next, the court should align the parties according to their positions with respect to the primary issue. If the alignment differs from that in the complaint, the court must determine whether complete diversity continues to exist.

*U.S. Fid. & Guar. Co. v. A & S Mfg. Co.*, 48 F.3d 131, 133 (4th Cir. 1995).

Sentry argues that (1) the primary issue in the controversy is whether the Carrier Defendants' policies provide coverage to Covil for the claims asserted by the Non-Diverse Defendants in the underlying actions, and (2) the Non-Diverse Defendants share Covil's position with respect to whether insurance coverage for any judgment entered in Non-Diverse Defendants' favor should apply—to wit, they desire liability coverage to apply. (ECF No. 4-1 at 3–6.) Accordingly, Sentry requests that the Court realign the Non-Diverse Defendants as plaintiffs in this declaratory judgment action. Moreover, Sentry asserts that once the Non-Diverse Defendants are properly realigned as plaintiffs, complete diversity exists between Covil and Non-Diverse Defendants on the one hand—all South Carolina citizens—and the Carrier Defendants on the other—Wisconsin, California, New York, and Connecticut corporations with their principal places of business in Wisconsin, Illinois, Connecticut, and New Hampshire, respectively. (*Id.* at 6.)

Covil argues that the Individual Defendants should not be realigned as plaintiffs because their interests are not aligned with the Receiver in this declaratory judgment action or in the underlying actions. (ECF No. 11 at 4.) Covil argues that, "based on the four corners of the [C]omplaint, the primary purpose of this lawsuit is the fulfillment of the

Covil Receiver's statutory functions under South Carolina law, as ordered by the Honorable Jean H. Toal." (*Id.* at 6; *see also* ECF No. 1-1 at 3–4 ("By this action, Covil seeks to administer its known assets, specifically including its known insurance assets, in a manner that is fair and equitable to Covil's known and unknown creditors and claimants in this jurisdiction and otherwise.").) Specifically, the Receiver is tasked with the duty to fully administer all assets of Covil. (ECF No. 11 at 6 (citing Order Appointing A Receiver for Covil Corporation, Case No. 2018-CP-40-0490 ("Receiver Order," ECF No. 11-1)).) To that end, and as detailed in the explanation of Counts I through V *supra*, Covil's Complaint seeks declarations against the Carrier Defendants, as well as "separate and distinct declarations against the underlying asbestos claimants." (*Id.* at 7.) Covil points to Count IV of the Complaint—which petitions the Court to declare that certain rights and interests of the Individual Defendants are limited and curtailed, by limiting any judgment(s) obtained against Covil in an asbestos lawsuit to the amount recoverable from the Carrier Defendants, and by prohibiting punitive or exemplary damages against the Receiver or the Receiver acting on behalf of Covil (*see* Compl. ¶70)—as evidence that Covil and its Receiver's interests, as against the Individual Defendants' interests, are irreducibly adverse. (*See* ECF No. 11 at 7–8.)

The Individual Defendants oppose realignment on similar grounds. In their own response to the Motion to Realign, they point out that Covil seeks to limit their recovery in the underlying actions to the amount recoverable from the Carrier Defendants, and to limit the amount of any judgment obtained against Covil to an "aggregate limit" that "fairly and equitably takes into account such other judgments that may be outstanding at the time of such judgment." (*See* ECF No. 21 at 2–3 (citing Compl. ¶ 11, ECF No. 1-1).) The

Individual Defendants argue that Covil, in essence, "seeks to determine the [Individual Defendants] rights as they relate to currently unknown parties in order to determine how funds should be allocated, pre-liability, to the [Individual Defendants] and those unknown future claimants." (*Id.* at 3.) They assert, "It is difficult to imagine a more adversarial position between parties. Nevertheless, Sentry and the other insurance carriers removed this action and Sentry now claim that the [Individual Defendants] and Covil are somehow 'aligned' against it and the other carriers." (*Id.*)

The parties' disagreement with respect to the first prong of the principal purpose test—to wit, the primary issue in controversy—is one of scope. Sentry defines the primary issue *narrowly*, averring that the parties' proper alignment is a function of whether they desire insurance coverage to apply to the underlying asbestos actions. (*See* ECF No. 4-1.) Plaintiff defines the primary issue *broadly*, as invoking the Receiver's statutory and court-appointed functions to properly administer Covil's assets, pitting Covil on one side of the dispute, with asbestos claimants seeking to maximize their recoveries and insurance carriers seeking to limit or preclude coverage on the other side. (*See* ECF No. 11 at 7.) As more fully explained below, the Court agrees with Sentry that the scope of the primary issue in this declaratory judgment action is narrow, and that the parties are rightly aligned by their respective positions on whether they desire insurance coverage to apply *vel non* to any judgments resulting from the underlying asbestos actions.

While it is true that Covil's Complaint includes a claim (Count IV) seeking declarations that would purport to limit the Individual Defendants' ability to recover from Covil's assets to any recovery they could make from the Covil Insurance Policies, it is equally true—by the terms of Covil's own Complaint—that the insurance policies are

Covil's only assets. (*See* Compl. ¶ 69, ECF No. 1-2 ("The Covil Insurance Policies are the only assets of Covil available to pay for Covil asbestos suits.").) Thus, whatever clash of interests exists between Covil and the Individual Defendants *within the instant declaratory judgment action*, is ancillary to the primary issue in the case, which is whether insurance coverage exists to satisfy any judgments the Individual Defendants may obtain against Covil in the underlying asbestos actions.

Indeed, the Receiver was appointed by way of the Honorable Jean H. Toal granting the motion of Denver and Janice Taylor, two of the Individual Defendants in this matter, who specifically argued for the necessity of a receiver because all that remains of Covil, which was dissolved in 1991, is its insurance coverage. (*See* ECF No. 25-1 at 2–3 ("Covil is not, as a normal corporation would be, controlled by its shareholders or management, but rather its insurance carriers through its lawyers."); ECF No. 11-1 ("This matter comes before the Court by way of [Denver and Janice Taylor's Motion for Appointment of a Receiver . . . . This Court finds that the application is meritorious under the applicable statute because Covil Corporation has dissolved.").) The supposed limitation that Count IV of the Complaint seeks to place upon the Individual Defendants recovery is illusory, because any recovery they make is *de facto* limited to the amount of applicable coverage. That the Individual Defendants' interests are antithetical to Covil's interests in the underlying actions themselves is immaterial. The principal purpose test must be decided based upon the *primary issue in the instant case*—whether the Covil Insurance Policies provide coverage for the asbestos actions, and if so how much. *See Marsh v. Cincinnati Ins. Co.*, 2008 WL 4614289, *2 (Oct. 15, 2008) (granting insurers motion to realign injured tort claimants from defendants to plaintiffs in coverage action filed by purported insured

against insurer; stating, "The relevant inquiry is to determine the parties' positions with respect to the primary issue *in this case*, not whether the parties are adversaries in another pending before another court." (emphasis in original)). Accordingly, the Court finds that the Individual/Non-Diverse Defendants should be realigned as plaintiffs in this action because their position regarding the primary issue is aligned with Covil's, and the Motion to Realign is granted.

The parties having been realigned, diversity jurisdiction now exists in this case. *See* 28 U.S.C. § 1332. All Plaintiffs are citizens of South Carolina, and all Defendants are out-of-state corporations with their principle places of business also out-of-state. It is undisputed that the amount in controversy is well over the minimum jurisdictional amount of $75,000. Therefore, the Court finds that it has subject matter jurisdiction over this case.

### B. Motion to Remand

Covil's Motion to Remand is premised upon the assertions that complete diversity does not exist among the parties, and that Sentry's request to realign the parties was made for the sole purpose of manufacturing diversity where none exists. (*See* ECF No. 12 at 2.) The Court's findings regarding the Motion to Realign, and realignment of the Individual Defendants as Plaintiffs, obviously undermine these premises. Accordingly, no further discussion of the Motion to Remand is necessary. Moreover, the Court need not reach the question of whether Count V of the Complaint, which seeks an anti-suit injunction against Zurich to enjoin the parallel declaratory judgment action in the United States District Court for the Middle District of North Carolina, invokes federal question jurisdiction (*see* Mot. to Remand, ECF No. 12 at 9–12 (arguing that federal question jurisdiction does not exist); Opp. to Remand, ECF No. 32 at 6–8 (arguing that Covil's

request for an anti-suit injunction turns on a question of federal law—namely, whether a state court has the authority to enjoin the prosecution of a case in federal court—thus invoking federal question jurisdiction)), because the Court has already found that it possesses diversity jurisdiction over this case.

## <u>CONCLUSION</u>

For the reasons stated above, Defendant Sentry's Motion to Realign the Co-Defendants (ECF No. 4) is GRANTED, and Plaintiff Covil's Motion to Remand (ECF No. 12) is DENIED.

**IT IS SO ORDERED.**

<u>/s/ Bruce Howe Hendricks</u>
United States District Judge

June 14, 2019
Greenville, South Carolina