UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Covil Corporation By Its Duly Appointed, Receiver, Peter D. Protopapas, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | Civil Action No. 7:18-3291-BHH |
| Zurich American Insurance Company; Sentry Casualty Company; United States Fidelity and Guaranty Company; TIG Insurance Company, As Successor in Interest to Fairmont Specialty Insurance Company, F/K/A Ranger Insurance Company; Hartford Accident And Indemnity Company; First State Insurance Company; Timothy W. Howe, Personal Representative Of Wayne Erwin Howe; Jeannette Howe; Jerry Crawford; Denver Taylor And Janice Taylor; and James Coleman Sizemore, Personal Representative Of James Calvin Sizemore, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **OPINION AND ORDER** |
| Defendants. | ) ) ) | |

This matter is before the Court on Hartford Accident and Indemnity Company ("Hartford") and First State Insurance Company's ("First State") (collectively "Hartford") motion for an order to enjoin Peter D. Protopapas, as duly appointed Receiver for the Covil Corporation ("Receiver") (ECF No. 69); Zurich American Insurance Company ("Zurich"), Sentry Insurance a Mutual Company (occasionally erroneously referred to as Sentry Casualty Company) ("Sentry"), and United States Fidelity and Guaranty Company ("USF&G") (collectively "Primary Insurers") motion for joinder in Hartford's motion to

1

enjoin the Receiver (ECF No. 73); and USF&G's motion for joinder (ECF No. 87) in Hartford's memorandum in further support of its motion to enjoin the Receiver (ECF No 86). For the reasons set forth in this Order, the motions are granted in part.

## BACKGROUND

This is an insurance coverage action in which the parties dispute the relative rights and obligations of Covil Corporation ("Covil"), its Receiver, and certain of Covil's insurers under policies issued or allegedly issued to Covil. Among other issues, the parties dispute the manner in which it should be determined whether injuries in underlying asbestos actions are within the products and completed operations hazard of the policies—rendering them subject to an aggregate limit, or outside the products and completed operations hazard—in which case no aggregate limit would apply, as well as the proper method for allocating injury across multiple policy years. (*See generally* Compl., ECF Nos. 1-1 & 1-2; Countercl., ECF No. 10.)

Peter D. Protopapas was appointed by the Honorable Jean H. Toal (Chief Justice Ret.) ("Justice Toal"), pursuant to South Carolina Code § 15-65-10, as Receiver for Covil Corporation, a dissolved South Carolina Corporation, on November 2, 2018. (ECF No. 80-1.) The order of appointment stated that the Receiver was vested with "the power and authority to fully administer all assets of Covil Corporation," including "the right and obligation to administer any insurance assets of Covil Corporation as well as any claims related to the actions or failure to act of Covil's insurance carriers." (*Id.* at 1.)

The Court is informed that there are more than twenty-five (25) underlying asbestos actions pending in South Carolina state courts against Covil. (*See* ECF No. 80 at 2.) There are related declaratory judgment actions and other insurance-related cases

pending in the United States District Court for the Middle District of North Carolina (*Zurich Am. Ins. Co. v. Covil Corporation*, No. 1:18-cv-932) and in this Court (*Covil Corporation v. Zurich Am. Ins. Co., et al.*, No. 7:18-cv-3291; *Protopapas v. Wall Templeton & Haldrup PA et al.*, No. 3:19-cv-01635; *Finch v. Sentry Casualty Co., et al.*, No. 3:19-cv-1827).

On June 14, 2019, in the instant case, this Court granted Sentry's motion to realign co-defendants, thus confirming diversity jurisdiction over the matter, and denied Covil's motion to remand. (*See* ECF No. 67.) On June 18, 2019, the Receiver filed a motion for status conference in five underlying asbestos actions in order to address issues related to pending claims against Covil and the Receiver's ability to administer Covil's assets in accordance with his duly appointed responsibilities. (*See* ECF No. 74-6.) Justice Toal first stated her intent to grant the request for a status conference by way of an email from her law clerk to all counsel dated June 21, 2019 (ECF No. 80-3 at 13), then issued a formal order granting the Receiver's motion for status conference on July 5, 2019, indicating that the status conference would convene at the Richland County Courthouse on July 11, 2019 at 10:00 a.m., and requiring the attendance of Zurich, Sentry, USF&G, TIG Insurance Company ("TIG"), Hartford, First State (collectively "Insurers"), and Wall Templeton & Haldrup, PA ("WT&H") (*see* ECF No. 80-2). Justice Toal found that "the status conference [was] necessary due to the issues affecting the Receiver's abilities to perform his duties as previously ordered by this [c]ourt." (*Id.* at 3.)

On July 2, 2019, Hartford filed a motion for an order enjoining the Receiver from pursuing judicial determinations in underlying state tort suits regarding insurance coverage issues arising from policies issued or allegedly issued by Hartford to Covil. (ECF No. 69.) On July 3, 2019, Zurich, Sentry, and USF&G ("Primary Insurers") filed for joinder

in Hartford's motion to enjoin the Receiver. (ECF No. 73.) The Receiver filed an opposition to Hartford's motion to enjoin and to the Primary Insurers joinder in the motion. (ECF No. 74.)

On July 10, 2019, Hartford filed a reply in support of its motion to enjoin the Receiver. (ECF No. 75.) The Primary Insurers filed a reply memorandum joining in Hartford's reply and, given Hartford's unique position from the Primary Insurers, submitting additional arguments in support of the motion to enjoin the Receiver. (ECF No. 77.) On July 11, 2019, this Court entered a Text Order denying in part and reserving ruling in part on Hartford's motion for a permanent injunction. (ECF No. 78.) The Court stated, "To the extent Defendants' motion seeks to use the power of this Court to prevent a duly noticed status conference set by Justice Jean Toal in a parallel State court action, the motion is denied." (*Id.*) However, the Court reserved ruling on the remainder of Defendants' motion. (*Id.*) Justice Toal convened the status conference as scheduled on July 11, 2019.

On July 29, 2019, Hartford filed a memorandum in further support of its motion to enjoin the Receiver, attaching a transcript of the July 11, 2019 status conference. (ECF Nos. 86 & 86-1.) USF&G filed for joinder in Hartford's memorandum and submitted its own supplementary arguments in support of the requested injunction. (ECF Nos. 87 & 88.) On August 2, 2019, Sentry and Zurich filed for joinder in Hartford's memorandum, in USF&G's joinder and supplement thereto, and submitted their own supplementary arguments in support of the requested injunction. (ECF No. 89.) The Receiver next filed a memorandum in opposition to the motion and joinders seeking a permanent injunction on August 13, 2019. (ECF Nos. 90 & 92.) On August 20, 2019, USF&G filed a reply to

the Receiver's memorandum. (ECF No. 93.) Hartford (ECF No. 94) and Sentry and Zurich (ECF No. 95) also filed replies on the same day.

On October 1, 2019, Hartford filed a memorandum in support of its "second renewed motion to enjoin [the Receiver]" (ECF No. 97), by which title Hartford is apparently referring to its July 29, 2019 filing (the "renewed motion") (ECF No. 86). The Receiver filed a memorandum in opposition to Hartford's renewed motion on October 14, 2019. (ECF No. 98.) Hartford filed a reply in support of its renewed motion on October 21, 2019. (ECF No. 99.)

Next, on October 24, 2019, Hartford filed a "notice of supplemental authority" related to its renewed motion to enjoin the Receiver. (ECF No. 100.) The Receiver responded to this notice on October 29, 2019. (ECF No. 101.) On November 15, 2019, the Receiver filed a notice of settlement in principle with Hartford, First State, and TIG. (ECF No. 102.) Although Hartford has apparently reached a settlement with Covil in this matter, the vast majority of arguments in its multitudinous filings apply with equal force to its Co-Defendant Insurers, and those Insurers have sought joinder in all of Hartford's relevant filings pertaining to the injunction request. Accordingly, in ruling on the above matters the Court will consider Hartford's filings and arguments as they apply to all the Insurers, though the filings might otherwise be moot due to the settlement.

## LEGAL STANDARD

The All-Writs Act authorizes district courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Such "writs" include injunctions against State court proceedings. This authority, however, is limited by the Anti-Injunction Act, which provides:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. These two statutes "act in concert, and if an injunction falls within one of the Anti-Injunction Act's three exceptions, the All-Writs Act provides the positive authority for federal courts to issue injunctions of state court proceedings." *In re Diet Drugs (Phentermine/Fenfluramine/ Dexfenfluramine) Prod. Liab. Litig.*, 369 F.3d 293, 305 (3d Cir. 2004) (internal citations, modifications, and quotation marks omitted).

An injunction is "expressly authorized by an Act of Congress" if the Act "creat[es] a specific and uniquely federal right or remedy, enforceable in a federal court of equity, that could be frustrated if the federal court were not empowered to enjoin a state court proceeding." *Mitchum v. Foster*, 407 U.S. 225, 237 (1972). The U.S. Supreme Court has held that the statute governing removal proceedings, 28 U.S.C. § 1446, provides express authorization to enjoin state proceedings in removed cases under the Anti-Injunction Act. *Id.* at 234 & n.12; *see also Kansas Pub. Employees Retirement Sys. v. Reimer & Koger Assoc. Inc.,* 77 F.3d 1063, 1069 (8th Cir. 1996) ("Although the removal statute only commands the state court to stay the case that was actually removed, it has been interpreted to authorize courts to enjoin later filed state cases that were filed for the purpose of subverting federal removal jurisdiction.").

## DISCUSSION

Mindful of the fact that it has already summarized the procedural history leading up to this ruling (*supra* at 2–5), the Court must now summarize the content of the parties' *extensive*, often repetitive, briefing on the Insurers' request that the Receiver be enjoined

from seeking in underlying State court tort suits judicial determinations regarding the coverage issues currently pending before the undersigned. In its initial motion for an injunction, Hartford notes the ironic fact that the Receiver filed this action in State court for the express purpose of avoiding "*seriatim* litigation and a multiplicity of actions" over insurance coverage issues for Covil. (ECF No. 69-1 at 2.) Thereafter, the Insurers removed the case (ECF No. 1) and the Court denied the Receiver's motion to remand (ECF No. 67). Hartford asserts that the Receiver was attempting to circumvent this Court's jurisdiction by asking the Receivership Court to order non-party Insurers to appear in the underlying State court tort actions for the purpose of addressing the Insurers' insurance coverage obligations in those actions. (ECF No. 69-1 at 2.) Hartford argues both that: (1) an injunction is expressly permitted by an act of Congress because the Receiver is trying to subvert federal removal jurisdiction (*id.* at 4–8); and (2) an injunction is necessary in aid of this Court's jurisdiction because the Receiver is trying to circumvent this Court's authority under the removal statute (*id.* at 8–9). Hartford points out that the parties and counsel to the dispute are "the same" in federal and State court, and the issues are "the same," so the Receiver's motion for a status conference was nothing more than a thinly veiled attempt to subvert the removal statute, 28 U.S.C. § 1446. (*Id.* at 5–8.) Alternatively, Hartford argues that this Court should enjoin the Receiver's efforts to pursue in State court claims that are squarely at issue here because the Receiver is attempting to undermine this Court's jurisdiction under the removal statue and 28 U.S.C. § 1332 (granting district courts original jurisdiction over civil actions where there is diversity of citizenship and the amount in controversy exceeds $75,000). (*Id.* at 8–9.) Zurich, Sentry, and USF&G (the "Primary Insurers") filed for joinder in Hartford's motion to enjoin the

Receiver (ECF No. 73), and the Court hereby grants that joinder request, considering Hartford's arguments as broadly applicable to all Insurers in this action.

In his original opposition to the motion, the Receiver noted that the Receivership Court, Justice Toal presiding, ordered the Receiver, all Covil Insurers, and WT&H to come to the July 11, 2019 status conference prepared to "discuss their positions regarding their insurance policies, Covil's files, communications, claims handling and settlement of the defaults entered in *Taylor et al. v. Covil Corp.*, 2018-CP-40-0490, *Hill, et al. v. Covil Corp.*, 2018-CP-40-04680, and the settlement offers extended prior to judgment in *Finch et al. v. Covil Corporation*, 1:16-CV-01077-CCE-JEP (M.D.N.C.)." (ECF No. 74-1 at 4–5.) The Receiver contends that between Covil's dissolution in 1993 and the Receiver's appointment on November 2, 2018, the Primary Insurers controlled the defense and handling of the Covil asbestos suits, at relevant times through their counsel of choice— WT&H. (ECF No. 74 at 4.) The Receiver states:

> According to factual averments in pleadings filed with the Receivership Court, *Finch* could have been settled before trial for an amount within Covil's policy limits, thus avoiding a judgment of over $35,000,000; *Hill,* in which WTH allowed a default and which was later settled for a seven-figure amount, was fully defensible under the South Carolina Worker's Compensation Act; and *Taylor* was also settled for a seven-figure amount as a result of the default by WTH. USF&G claims exhaustion of its policies, while Zurich alleges that its total exposure for *Finch* is $250,000, and has sought to tender that amount in full satisfaction of the *Finch* judgment.

(ECF No. 74 at 5.) The Receiver asserts that in order to properly administer Covil's insurance assets, the Receiver and Receivership Court are entitled to inquire into the matters set forth in the July 5, 2019 order. (*Id.*) The Receiver argues that he was not, by way of the status conference, attempting to subvert this Court's jurisdiction by resolving in underlying state court tort suits the coverage issues raised here, but rather "seeking

*information* that he needs to discharge his duties to Covil and the court that appointed him to serve as Covil's Receiver." (ECF No. 74 at 6 (emphasis in original).) The Receiver asserts that the removal exception to the Anti-Injunction Act's general prohibition of federal courts from issuing injunctions to stay State court proceedings does not apply in this situation "because the [c]ourt that appointed the Receiver is **not the same court** in which the Receiver filed his insurance coverage action that was removed to this Court." (*Id.*) In other words, the removal statute "does not have any effect on the authority and jurisdiction of the court that appointed the Receiver." (*Id.*) Moreover, the Receiver contends that Covil's insurance assets are in *custodia legis* of the Receivership Court because that court was the first to exercise jurisdiction over the "*res*" at issue in the case— the insurance assets—and "where the jurisdiction of the state court has first attached, the federal court is precluded from exercising its jurisdiction over the same *res* to defeat or impair the state court's jurisdiction." (ECF No. 74 at 7 (quoting *Kline v. Burke Constr. Co.*, 260 U.S. 226, 229 (1922)).) The Receiver argues: (1) the Receivership Court rightfully appointed the Receiver to manage Covil's remaining assets—to wit, the Covil insurance policies; (2) the Receiver is not seeking from the Receivership Court an adjudication of any of the insurance coverage issues set forth in the Receiver's complaint in this case; (3) the jurisdiction of the Receivership Court attached to the *res* at issue before this Court's jurisdiction attached, and federal courts are precluded from exercising their jurisdiction over the same *res* to defeat or impair the state court's jurisdiction (*see Kline*, 260 U.S. at 229); (4) federal law, 28 U.S.C. § 2283, prohibits this Court from enjoining the Receivership Court from granting the relief requested in the Receiver's motion for status conference; (5) the removal exception to the Anti-Injunction Act, 28 U.S.C. § 1446(d),

does not apply here because the exception focuses *only* on the removed case and therefore restricts the State court's actions *only* as to that case (*see Ackerman v. ExxonMobil Corp.*, 734 F.3d 237, 250 (4th Cir. 2013) ("Section 1446(d), however, speaks only in terms of *the removed case*." (emphasis in original))). (*See* ECF No. 74 at 13–24.)

In reply, Hartford argues that federal cases have repeatedly and consistently rejected the Receiver's assertion that *Kline* prevents a federal court from exercising jurisdiction over a removed case involving a *res* merely because the State court's jurisdiction attached first. (ECF No. 75 at 7 (citing *Karl v. Quality Loan Service Corporation*, 759 F. Supp. 2d 1240, 1245 (D. Nev. 2010), *affd*, 553 Fed. Appx. 733 (9th Cir. 2014)).) Hartford notes that the situation in *Kline*, where there were two genuinely parallel actions, differs from the instant case, where "[t]he state proceeding no longer exists by virtue of the case's removal to federal court," and the federal court's "jurisdiction over the case therefore does not threaten the continuing jurisdiction of the state court over any *res*, because Congress has provided that removal divests the state court of jurisdiction." *Karl*, 759 F. Supp. 2d at 1244–45.

In their separately filed reply memorandum joining in Hartford's reply, the Primary Insurers submit additional arguments in support of the motion to enjoin the Receiver. (*See* ECF No. 77.) The Primary Insurers note that the Receiver moved for a rule to show cause in the Receivership Court asking Justice Toal to find that the Primary Insurers violated the Receivership Court's mediation order and generally applicable ADR rules by filing a confidential mediation communication, under seal, before *this* Court in an action removed to *this* Court. (*Id.* at 3.) The Primary Insurers argue that if the Receiver was not trying to circumvent this Court's jurisdiction, he would simply file a motion before this Court, where

the confidential document was filed and where jurisdiction over the matter rests subject to the removal statute. (*Id.*) Moreover, the Primary Insurers note that the Receivership Court ordered them to be prepared to discuss their respective positions regarding: (1) the settlement in the *Hill* matter, which falls squarely within the scope of the action that was removed to this Court; and (2) the settlement offers extended prior to the judgment in *Finch*, which is the topic of another case that is currently pending before this Court in *Finch v. Sentry Casualty Co., et al.*, No. 3:19-cv-1827 (removed to this Court on June 27, 2019). (ECF No. 77 at 4–5.) While the Receiver purports to have merely asked the State court to conduct an "informational" status conference, the Primary Insurers contend that the topics raised belie that representation.

The undersigned declined to enjoin the July 11, 2019 status conference, but reserved ruling on the broader question of whether the Receiver's conduct in State court should be enjoined. (*See* ECF No. 78.) The Court's review of the status conference transcript revealed the following relevant events. Counsel for the Receiver attempted to show that the Receiver does not know how the payments in the *Hill* and *Taylor* settlements were allocated among the settling insurance carriers (Zurich, Sentry, and Travelers), and Justice Toal stated:

> I don't care about that. I'm just trying to—and I don't care about anything about the details of that settlement. They're private unless the—the parties choose to reveal them, but I—I don't reveal them when I have anything to do with allocation issues. And I wouldn't have anything to do with this because these two were not tried. They were settled prior to trial. So that's all I need is that there were carriers that are involved in this whole thing who were involved in that and they settled.

(ECF No. 86-1 at 34.) When counsel for the Receiver re-raises the issue of the settlement amounts and their allocation, and states the Receiver is trying to discern how those

amounts are currently affecting Covil's policies, Justice Toal answers: "Yeah. But that's not in front of me right now. So I—I don't need to go there at the moment." (*Id.* at 34–35.) Counsel for the Receiver then attempts to raise the fact that although *Hill* and *Taylor* are settled, and although Justice Toal indicated she does not have anything to do with them after such settlement, that there are post-settlement motions pending, to which Justice Toal responds: "Well, I know. But I can't do that and get the status of them at the same time," and "I'm saying I'm not going there right now." (*Id.* at 36.) Counsel for the Receiver then describe for Justice Toal the coverage issues in the various cases—including Covil's positions and its understanding of the state of the law on those issues—all under the guise of "getting an accounting from the insurance carriers," in response to which Justice Toal repeatedly reminds counsel that her ability to direct inquiries into those matters depends on the limits of her jurisdiction and on the boundaries of their questions. (*See id.* at 46—65.) Counsel for the Receiver and counsel for WT&H in the malpractice action then address the details of what has and has not been produced by way of WT&H's files for its client, Covil, with respect to the *Hill* and *Taylor* matters and additional requests, and address whether a rule to show cause is required; Justice Toal repeatedly steers the parties away from inserting their positions regarding the merits of the malpractice action, and points out that it does not seem a rule to show cause is necessary given counsel for WT&H's good faith efforts to comply with the Receiver's requests. (*See id.* at 65–110.) Counsel for the Receiver and counsel for USF&G then discuss a proposed rule to show cause with respect to Travelers/USF&G's unauthorized disclosure of a confidential mediation communication in violation of the Receivership Court's mediation order and the ADR rules. (*See id.* at 110–125.) In response, Justice Toal states:

> [W]ith respect to the rules to show cause, I will deny at the moment a rule to show cause issued to Wall, Templeton with the caveat that we'll see how this production occurs. I think very good faith efforts are being made now that Mr. Warren Powell and his firm is in this case, and they are not being guided by the insurance companies. They are certainly cooperating with the insurance companies. They're keeping everyone fully apprised of what they're doing, and they're trying in every way to discharge what they see as their responsibilities to Covil and its receiver as their clients. And as long as that proceeds, I think we will be in good shape.

(*Id.* at 126.)

> With respect to a rule to show cause as to the carriers, that request has now been modified as a rule to show cause directed at Travelers/USF&G. I want a proposed order to be sent to me, and Mr. Smith, I will designate you as the chief person in charge and I'm sure there are others around here who can take care of the mechanics of it. . . . But what I want y'all to do is send me a proposed order, with a copy to the two counsel for USF&G for them to examine, as quickly as you can that issues a rule to show cause against the insurance company to—to show cause as to why th[ey] should not be held in contempt for failure to obey the order of the Court of March of this year and of the previous order directing the disclosure of the information you seek from them with respect to coverages, allocations, and matters of that type. In addition to that, the rule to show cause should direct that a hearing be held on the—on whether the insurance company should be held in contempt and be sanctioned for its failure to protect the confidentiality of the ADR communications in the face of the directive from the client Covil, through its receiver that the matter should not be disclosed.

(*Id.* at 128–29.) After counsel for the Receiver clarifies that the alleged ADR/confidentiality violation concentrated on Travelers/USF&G specifically, but that the Receiver desires the rule to show cause on disclosure of coverages, allocations, and related matters to apply to all the Insurers, Justice Toal responds:

> Exactly. And—and should. And I would—that ought to be a part of the proposed order—. . . .—and it ought to be sent to all companies affected. . . . But frankly, what I would do is put it in two phases so that you can go on and get the thing that is the most on top of the table, which is *Hill/Taylor*, moving forward and the information that's needed in *Hill/Taylor* from Travelers/USF&G. The other just put in an order that can be dealt with separately so that the insurance companies will all have a complete ability to respond and look at this thing and see what you think about it and whether there are dilemmas or problems. And again, it's the—this is to conduct a

rule to show cause hearing. So this is not an order directing you to do anything yet. It is an order that would be [i]n aid of conducting a hearing about the coverage matters that have been ventilated by the Receiver, and when you get that, then you'll have the ability to respond.

(*Id.* at 130–31.) Counsel for Hartford then clarifies that by filing a written response to the Receiver's rule to show cause submission Hartford will not be deemed to have waived any arguments regarding a lack of jurisdiction, and Justice Toal states:

[I]f they don't make that clear in the order, I'll revise it—or you will give me some revision that makes it clear. I don't intend to interfere with your ability to contend that the Federal court is the only one. They are asking for information—
. . . .
MR. RUGGERI: Correct. And—and it may be that there's a discussion of what an accounting means—
THE COURT: Exactly.

(*Id.* at 135–36.)

After the July 11, 2019 status conference, Hartford filed its renewed motion to enjoin the Receiver. (ECF No. 86.) Hartford does not dispute that Justice Toal has the ability to appoint a Receiver to "administer" Covil's estate and that the Receiver has the right to perform an accounting of the assets of the estate. However, Hartford asserts that the Receiver may not ask the Insurers to concede legal positions or mixed questions of law and fact, or request that the Receivership Court resolve substantively disputed insurance coverage issues. (*Id.* at 2.) Hartford argues that the events at the July 11, 2019 status conference and events since that time demonstrate the Receiver is indeed asking Justice Toal to resolve disputed insurance coverage issues under the cover of seeking an "accounting." (*See id.* at 4–6.) Hartford cites various passages from the status conference transcript as evidence of the Receiver's intent:

You have jurisdiction over all the carriers who attended that mediation. They've all signed the mediation agreement and you have jurisdiction to

bring them in here to discuss with them the policies as it relates to those -- specifically those -- the *Hill* and *Taylor* -- and -- and again, they paid money . . . they -- they have submitted themselves to your jurisdiction by virtue of their violation of your order, the rules, and mediation agreement. (Tr. 52:7-15.)

We take the position that the only way for the Receiver to act on those policies is to have an accounting of what they are. And so we're asking you, in a status conference, to ask them what -- what -- what -- what does Mr. Protopappas have available next month in the trial that's coming up . . . So you [Judge Toal] certainly have the ability, as the [R]eceiver Court, to determine the amounts available on the policy, how much has been exhausted, who authorized the exhaustion of those policies. (Tr. 55:9-12.)

Covil has operations coverage from 1964 until 1985, and the operations limits is 46.9 million dollars per occurrence, each and every occurrence with no limit to the number of occurrences. Now, South Carolina law has not decided the issue of asbestos coverage for operations claims, and South Carolina law has not decided the issue of what constitutes an occurrence for purposes of these policies. Is it each claimant? Is it the job site? Those are issues that are going to be critical in any determination of what these limits are and available for each and every case. There is no South Carolina law on this issue. There is a Fourth Circuit decision, [*In re Wallace & Gale Co.*, 385 F.3d 820, 823 (4th Cir. 2004), *as amended* (Nov. 15, 2004),] and that is why every time that there's anything that goes on in South Carolina, the insurance companies are desperate to remove the case to a Federal court. (Tr. 57:12-22.)

[T]here are several issues that are not decided under South Carolina law. One is, is operations coverage part issue, the other is how many occurrences there are, whether it's the operations at the job site, etcetera. There's also the issue of how a policy is triggered for coverage in South Carolina. That has not been resolved by a case in South Carolina. These are all issues that make it very important for us to know how did the insurance companies treat those claims prior to the involvement of the Receiver and, in fact, how did the insurance companies treat those claims for trigger of coverage purposes after the Receiver was appointed? We don't know those questions either. And that's why we've asked this Court for an accounting, [n]ot so we can interfere with other litigation, wherever that may be, but more importantly so that we can know how we can operate on a daily basis and satisfy this Court, satisfy our responsibilities, and try to deal, as counsel has said before, with the cases that are pending in this Court and the demands that are made." (Tr. 60:12-61:7.)

(ECF No. 86-1.) In particular, Hartford points to a passage from the proposed order that

the Receiver submitted for Justice Toal's consideration, which states the Insurers

> must be prepared to discuss by policy and annual period or portion thereof the original and remaining limits of Covil's insurance policies under all applicable coverage parts, including separately as to the product liability/completed operations coverage part and the operations/premises coverage part and to provide an accounting of the amounts paid in settlement for each claim paid or settled, who authorized payment, under what coverage parts of the policies settlements or judgments were paid, documentation or other evidence supporting the analysis and characterization of claims as products/completed operations or operations/premises claims, method of allocation of settlements or judgments paid among Insurers, policies and policy years and if no payment was made because of a denial of coverage, the stated basis at the time of settlement for such denial.

(ECF No. 86-2 at 12.) Hartford contends that the Receiver is fully aware that Hartford has already provided the policies it issued to Covil and the Receiver knows that Hartford has paid nothing under those policies. As such, Hartford argues "[t]he Receiver is seeking this information because of disagreements over substantive coverage issues under policies Hartford issued to Covil with the hope of getting Justice Toal to rule on the disputed issues." (ECF No. 86 at 4–5.) Hartford renews its request for the Court to rule on the issue it reserved in its July 11, 2019 Text Order and to enjoin the Receiver from surreptitiously seeking judicial determinations regarding coverage issues in State court. (*Id.* at 6.)

USF&G filed for joinder in Hartford's renewed motion and submitted its own supplementary arguments in support of the injunction. (ECF No. 87.) Specifically, USF&G asserts the Receiver went well beyond the parameters of a true status conference at the July 11, 2019 proceeding and instead "argued his claims against the [I]nsurers, sought and received show cause orders, and continued an apparent effort to coerce the insurers into litigating in [S]tate court the coverage issues currently before this Court." (*Id.* at 2.) Like Hartford, USF&G took aim at the Receiver's proposed order, stating it "would have

the [I]nsurers appear in [S]tate court to discuss their analysis and characterization of injury during their policy periods, the very issue that is central to the coverage litigation pending before this Court." (*Id.* at 4.) USF&G argues that the Receiver's efforts are problematic for three reasons: (1) the Insurers are not parties to any of the State court tort actions and thus could not be subjected in those actions to the affirmative relief sought by the Receiver; (2) the proposed order would require the Insurers to show cause why they should not produce coverage information with respect to *all* actions against Covil, not just the five cases in which the status conference was held—demonstrating that the relief requested seeks information beyond the status of coverage for the five cases in which the status conference was noticed; and (3) the proposed order requires the Insurers to provide discovery concerning *Finch*, which is not one of the cases in which the status conference was held, and the result of which is at issue in a coverage action pending before *this* Court. (*Id.* at 5.)

Sentry and Zurich also filed for joinder in Hartford's renewed motion and submitted their own supplementary arguments. (ECF No. 89.) Sentry and Zurich note that the Receiver's proposed order would direct the Insurers to "show cause why they should not be held in contempt for failing to provide information concerning their positions regarding their insurance policies, Covil's files, communications, claims handling and settlement of the defaults entered in *Taylor* and *Hill*, and the settlement offers extended prior to judgment in *Finch* as ordered by the Court on July 5, 2019." (ECF No. 86-2 at 13.) Sentry and Zurich argue that, "Providing 'positions' as to these issues is equivalent to litigating these issues, and/or being compelled to provide discovery with regard to them, in a court that has no jurisdiction over Sentry or Zurich, and that has no case pending in which those

issues are properly before it." (ECF No. 89 at 2.)

The Receiver filed a memorandum in opposition to Hartford's renewed motion and joinders thereto. (ECF No. 90.) Therein, the Receiver reiterates his position that the Insurers have ongoing obligations under the policies to Covil, their insured, and therefore to the Receiver. Likewise, the Receiver asserts, he has an ongoing duty to "administer" the policies, irrespective of any coverage litigation in this Court. (*Id.* at 2.) "Among other things, the [I]nsurers have ongoing obligations to defend and indemnify Covil in dozens of underlying cases pending before Chief Justice Toal and other courts in South Carolina." (*Id.*) The Receiver insists that his efforts "are not an 'end run' around the coverage litigation, but, rather, solely an effort to obtain the documents and information necessary to defend the cases brought against Covil and to administer Covil's policies while the coverage litigation proceeds." (*Id.* at 3.) The Receiver argues that contrary to their duty under the implied covenant of good faith and fair dealing incorporated in the policies, the moving Insurers are engaged in efforts to impair Covil's rights to receive benefits under the insurance contracts—namely, by continuing to withhold information relevant to a full understanding of how these Insurers have allocated almost 30 years of asbestos-related settlements under their policies, and to withhold a full accounting of the amounts paid by the Insurers under the policies and for what claims, under which coverage parts of the policies. (*Id.* at 8.) The Receiver contends that the moving Insurers perceive their role as adversarial, rather than collaborative, with Covil in the coordination of its underlying defense; instead of providing information regarding the policies and their administration to Covil, as required by the policies themselves, the Insurers instituted a coverage action (in the Middle District of North Carolina) and have repeatedly sought to enjoin the

Receiver from obtaining the information he needs to administer Covil's insurance policies. (*Id.* at 9.)

The Court could go on and on in the attempt to summarize all of the parties' briefing on the injunction issue—for example, USF&G's reply to the Receiver's memorandum in opposition to Hartford's renewed motion (ECF No. 93), Hartford's reply to the Receiver's memorandum (ECF No. 94), Sentry and Zurich's reply to the Receiver's memorandum (ECF No. 95), Hartford's memorandum in support of its renewed motion (ECF No. 97), the Receiver's additional memorandum in opposition to Hartford's renewed motion (ECF No. 98), Hartford's reply in support of its renewed motion (ECF No. 99), Hartford's notice of supplemental authority related to its renewed motion (ECF No. 100), and the Receiver's response to Hartford's notice of supplemental authority (ECF No. 101), all remain undiscussed—but further summary would be superfluous. Suffice it to say, USF&G, Hartford, Sentry, and Zurich all maintain that they have provided, in good faith, the basic policy information the Receiver has requested, including loss runs where applicable. (*See* ECF Nos. 93, 94, 95.) The Insurers also contend that developments in the Receiver's pursuit of certain relief from the Receivership Court at a September 13, 2019 hearing, and by way of another proposed order that was subsequently adopted by the Receivership Court without modification, leave no doubt that the Receiver is asking the State court to rule on disputed coverage issues. (*See, e.g.*, ECF No. 97 at 3–4.) For example, the proposed/adopted order authorizes discovery in support of "[a]n inquiry into the insurance coverage of Covil Corporation . . . to fully determine the amount of authority available for settlement of asbestos personal injury actions filed against Covil." (ECF No. 97-2 at 6.) At the September 13, 2019 hearing, the Receiver represented that he needs

this information in order to "analyze what exposure [he] think[s] a carrier may have in [a] certain piece of litigation." (Tr. 10:24-25, ECF No. 97-1 at 11.) With respect to policies that the Receiver asserts are missing or incomplete, and which the Receiver was attempting to subpoena, the Receiver further stated:

> And if the Rule to Show Cause hearing – if it does take place, I would want a witness. And I will be specific in the subpoena to [the Insurers], so they can have them prepared to answer our questions regarding what policies they have, and what efforts they've done to locate them. And how they ran Covil for thirty years and what decisions they made. The impact, the limits of the policies when [sic] appear at mediation in *Hopper*, *Rollins* and other cases.

(Tr. 87:9-16, *Id.* at 88.) Justice Toal responded:

> Mr. Protopapas, all right, you know they contend that because they're not a party any of these cases, that you can't just subpoena them. Might be able to use discovery. But they say the discovery tool is used to get to admissible evidence, and the coverage issues are not admissible evidence.
> So the subpoena is not available to you. What is available to you, is a Rule to Show Cause in connection with your administration of the Receivership. And the documents you've just shown me is a pretty straight forward request that because they are not – because you do not understand how you can have full authority for claims mediation without knowing the policies and insurance coverage that you are requesting that they give you all this stuff.
> *This may be the very stuff you're also litigating in Federal Court*. All right. They sometimes say that that litigation precludes this, and they sometimes say differently.

(Tr. 87:10-88:9, *Id.* at 88–89.) The Receiver continues to assert that all the actions that the Insurers seek to enjoin are solely an effort to obtain the information necessary to defend the asbestos actions brought against Covil and to administer Covil's assets in accordance with the Receivership Court's order. (*See* ECF No. 98.)

As is often the case with hotly contested litigation, the answer to the issue under consideration lies somewhere *between* the parties' polarized characterizations of what is the case. The Insurers assert the Receiver is deliberately attempting to subvert federal

removal and supplant this Court's authority with State court proceedings. The Receiver contends he is merely trying to fulfill his court-appointed duties, all while being hampered at every step by the Insurers' unwillingness to fulfill ongoing obligations to their insured— Covil.

The Supreme Court, has cautioned lower courts regarding the exceptions to the Anti-Injunction Act:

> [S]ince the statutory prohibition against [injunctions of State court proceedings] in part rests on the fundamental constitutional independence of the States and their courts, the exceptions should not be enlarged by loose statutory construction. Proceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately this Court.

*Atl. Coast Line R. Co. v. Bhd. of Locomotive Engineers*, 398 U.S. 281, 287 (1970). Nevertheless, courts have held that the removal exception to the Anti-Injunction Act permits a federal court to enjoin a State court proceeding other than the case that was actually removed, where that secondary proceeding would infringe upon federal removal jurisdiction. In *Kansas Pub. Employees Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 77 F.3d 1063 (8th Cir. 1996), the Eighth Circuit Court of Appeals stated, "Although the removal statute only commands the state court to stay the case that was actually removed, it has been interpreted to authorize courts to enjoin later filed state cases that were filed for the purpose of subverting federal removal jurisdiction." *Id.* at 1069. The Receiver argues that *Kansas Pub. Employees* is inapposite here because the cases pending before the Receivership Court, specifically *Hill* and *Taylor*, are not "later filed state cases that were filed for the purpose of subverting federal removal jurisdiction." (*See* ECF No. 74 at 24.) Rather, the Receiver notes, the *Hill* and *Taylor* asbestos actions were

filed long before the Receiver filed the coverage action that was removed to this Court. (*Id.*) The Court disagrees and finds that federal courts retain authority to enjoin State court proceedings, regardless of label, that risk "subverting federal removal jurisdiction," *see Kansas Pub. Employees*, 77 F.3d at 1069, whether or not those proceedings come in the form of "later filed cases." In other words, the reasoning that supports application of the removal exception to the Anti-Injunction Act—to wit, preservation of federal removal jurisdiction itself—applies with equal force whether the State court proceeding that threatens to undermine federal jurisdiction is a later filed case, a status conference in a preexisting case, the adoption of a proposed order in a preexisting case, or any other "proceeding" that one might imagine. It is the nexus between the substantive issues pending in federal court and the issues sought to be adjudicated in State court that controls, not the label placed on, or timing of, the State court proceeding.

Even accounting for the fact that the Insurers are not party to the cases pending in the Receivership Court, it may well be true that the Receiver is entitled to additional policy-related documents and information from the Insurers in order to faithfully perform his court-appointed duties in that forum. (*See* ECF No. 97-2 (setting forth an itemized list of documents and information sought).) This is why, to the extent the Insurers are asking for it, the Court declines to issue a broad moratorium on further proceedings that implicate the Insurers in the Receivership Court, because to do so would constitute overreach of this Court's equitable powers. Thus, the motion and joinders seeking an injunction against the Receiver will be granted only in part. The Court also declines to descend into the particulars of precisely which documents and what information, if any, the Insurers have improperly withheld from the Receiver, because those particulars are squarely the

province of Justice Toal in asbestos actions over which this Court has no jurisdiction.

**However**, the Receiver *cannot* use the Receivership Court as a mechanism to indirectly force the Insurers to stake out litigation positions integral to coverage issues pending before the undersigned and to indirectly coerce the production of discovery information relevant to issues pending here but not in the Receivership Court. The Court finds that the Receiver's efforts in this regard have indeed threatened to undermine the Court's removal jurisdiction. Those efforts include, but are not limited to: (1) attempting to force the Insurers, by way of a proposed order submitted to the Receivership Court, to discuss, document, and produce evidence supporting their analysis and characterization of underlying asbestos claims as products/completed operations or operations/premises claims (*see* ECF No. 86-2 at 12); (2) seeking to require the Insurers, by way of a rule to show cause, to provide their positions regarding their insurance policies, Covil's files, communications, claims handling, and settlement of the defaults entered in *Taylor* and *Hill* (*id.* at 13); and (3) seeking to require the Insurers, by way of a rule to show cause, to provide discovery in *Finch*, which is not one of the cases in which the status conference was held, but which is the subject of a coverage action pending before this Court (*id.*). Neither the Court, nor the Insurers need speculate about the Receiver's desire for the State courts to adjudicate the substantive coverage issues; in his October 21, 2019 petition for a counter-writ of certiorari filed with the Supreme Court of South Carolina the Receiver states:

> *Rather than looking to federal courts* or the law of other states *to decide these critical issues*, the Supreme Court of South Carolina should take this opportunity to decide these important issues itself, *or direct the Receiver court to use its in rem jurisdiction to determine*:
>
> 1. Trigger of Coverage. For suits alleging bodily injury and/or wrongful death

as a result of exposure to asbestos, what is the "trigger of coverage" under the "occurrence-based" primary, umbrella and excess general liability insurance policies at issue in this case?

2. "Completed Operations": When an insurance policy contains aggregate limits that apply only to third party claimant injury resulting from the insured's "completed operations," what is the proper interpretation of "completed operations"? Do the aggregate limits apply only if the third party claimant is exposed to asbestos *after* the insured completes its operations at a particular location where the claimant alleges asbestos exposure?

3. Burden of Proof: Do the insurers have the burden to show the applicability of the aggregate limits of liability to a particular claim of asbestos injury or death?

4. Occurrences: Do only the "per occurrence" limits apply if the third-party claimant is exposed to asbestos *during* the operations of the insured? If so, can the "per occurrence" limits be used repeatedly by Covil for each and every "occurrence" to pay claims of bodily injury and/or wrongful death resulting from exposure to asbestos during Covil's operations?

5. Allocation. When multiple "occurrence"-based insurance policies are triggered because asbestos injury to a third party claimant takes place during each policy's term, must each insurer indemnify the insured in full, for "all sums" the insured must pay the asbestos claimant, subject to policy limits, and later rights to seek reimbursement from other insurers with triggered policies, or must each insurer pay only a "pro rata" share of the insured's total liabilities, calculated based on each insurer's time on the risk relative to the claimant's total injury allocable to the time a particular policy was in force? If the insurers are not required to pay "all sums," is the insured required to absorb the shares of insurers that are insolvent or liquidated or otherwise unavailable or unable to pay and when the insured is a dissolved South Carolina corporation, must other solvent insurers "pick up" the shares of insolvent insurers?

(ECF No. 100-1 at 18–19.) The Receiver's subjective motives are immaterial, and the Court finds that these threats to its removal jurisdiction are most likely the natural consequence of zealous advocacy on the Receiver's part. It is further abundantly clear to this Court that Justice Toal, for whom the undersigned has the *highest* respect, has done and is doing her best to keep the underlying state tort suits moving forward appropriately *without* interfering with the coverage issues pending here. (*See generally* ECF Nos. 86-1

& 97-1.) Nonetheless, the Court finds it proper, as both expressly authorized by an Act of Congress and necessary in aid of its jurisdiction, to enjoin the Receiver from further pursuing judicial determinations in underlying state tort suits regarding insurance coverage issues arising from policies issued or allegedly issued to Covil by the Insurers.

## **CONCLUSION**

For the reasons stated, Hartford's motion to enjoin the Receiver (ECF No. 69), the Primary Insurers' motion for joinder thereto (ECF No. 73), and USF&G's motion for joinder (ECF No. 87) in Hartford's memorandum in further support of its motion to enjoin the Receiver are all GRANTED IN PART, as more fully described above.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

February 27, 2020
Greenville, South Carolina