# EXHIBIT E

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF SPARTANBURG | FOR THE SEVENTH JUDICIAL CIRCUIT |

TRACY JOLLY PAVLISH, individually and as Personal Representative of the Estate of Beverly Dale Jolly, and Brenda Rice Jolly,

Plaintiffs,

vs.

COVIL CORPORATION

SENTRY INSURANCE A MUTUAL COMPANY

SOUTHERN INSULATION, INC.

STARR DAVIS COMPANY, INC.

STARR DAVIS COMPANY OF S.C., INC.

UNITED STATES FIDELITY AND GUARANTY COMPANY

ZURICH AMERICAN INSURANCE COMPANY, a/k/a ZURICH NORTH AMERICA, INC.,

Defendants.

Case Number: 2019-CP-42-03968

**MOTION TO APPROVE SETTELEMENT AGREEMENT, TO ESTABLISH COVIL QUALIFIED SETTLEMENT FUND AND APPROVING COVIL QSF, LLC AS A QUALIFIED SETTLEMENT FUND AND RETAIN JURISDICTION OVER THE QUALIFIED SETTLEMENT FUND**

Covil Corporation (hereinafter "Covil"), by and through its duly-appointed Receiver, Peter D. Protopapas (the "Receiver"), hereby moves this Court for an Order approving the settlements as outlined in the attached exhibits A and B, and to establish a qualified settlement fund, approve Covil QSF, LLC as a qualified settlement fund and retain jurisdiction over the qualified settlement Fund as outlined in Exhibit C, in the instant action.

Respectfully submitted,

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968

s/ Jescelyn T. Spitz
Jescelyn T. Spitz SC Bar 101880
Rikard & Protopapas, LLC
1329 Blanding Street
Columbia, South Carolina 29201
803.978.6111
jspitz@rplegalgroup.com

Attorney for the Receiver

This 13th Day of March, 2020

# EXHIBIT A

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968

STATE OF SOUTH CAROLINA

COUNTY OF YORK

ROXANNE FALLS, Individually and as
Personal Representative of the Estate of
CHARLOTTE GAYE SMITH,

          Plaintiffs,

vs.

CBS Corporation, et al.,

          Defendants.

In Re:

Receivership of Covil Corporation by and
through its Receiver Peter D. Protopapas

IN THE COURT OF COMMON PLEAS
FOR THE SIXTH JUDICIAL CIRCUIT
C/A NO.: 2015-CP-46-02155

**JOINT MOTION TO APPROVE
SETTLEMENT AGREEMENT**

---

STATE OF SOUTH CAROLINA

COUNTY OF YORK

TIMOTHY W. HOWE, Individually and as
Personal Representative of the Estate of
Wayne Ervin Howe, deceased, and Jeanette
Howe,

          Plaintiffs,

vs.

Air & Liquid Systems Corporation, et al.,

          Defendants.

In Re:

Receivership of Covil Corporation by and
through its Receiver Peter D. Protopapas

IN THE COURT OF COMMON PLEAS
FOR THE SIXTH JUDICIAL CIRCUIT
C/A NO.: 2015-CP-46-03456

**JOINT MOTION TO APPROVE
SETTLEMENT AGREEMENT**

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968
ELECTRONICALLY FILED - 2020 Mar 05 11:53 AM - YORK - COMMON PLEAS - CASE#2015CP4602155

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS FOR THE FIFTH JUDICIAL CIRCUIT C/A NO.: 2019-CP-40-00076 |
| COUNTY OF RICHLAND | |
| CHARLES T. HOPPER and REBECCA HOPPER, | |
| Plaintiffs, | **JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT** |
| vs. | |
| Air & Liquid Systems Corporation, et al., | |
| Defendants. | |
| In Re: | |
| Receivership of Covil Corporation by and through its Receiver Peter D. Protopapas | |

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS FOR THE FIFTH JUDICIAL CIRCUIT C/A NO.: 2018-CP-40-04680 |
| COUNTY OF RICHLAND | |
| JAMES MICHAEL HILL, | |
| Plaintiff, | **JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT** |
| vs. | |
| Advance Auto Parts, Inc., et al., | |
| Defendants. | |
| In Re: | |
| Receivership of Covil Corporation by and through its Receiver Peter D. Protopapas | |

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968
ELECTRONICALLY FILED - 2020 Mar 05 11:53 AM - YORK - COMMON PLEAS - CASE#2015CP4602155

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968
ELECTRONICALLY FILED - 2020 Mar 05 11:53 AM - YORK - COMMON PLEAS - CASE#2015CP4602155

| | |
|---|---|
| STATE OF SOUTH CAROLINA )<br><br>COUNTY OF RICHLAND )<br><br>DENVER D. TAYLOR and JANICE<br>TAYLOR, )<br><br>Plaintiffs, )<br><br>vs. )<br><br>Air & Liquid Systems Corporation, et al., )<br><br>Defendants. )<br>In Re: )<br><br>Receivership of Covil Corporation by and )<br>through its Receiver Peter D. Protopapas )<br> ) | IN THE COURT OF COMMON PLEAS<br>FOR THE FIFTH JUDICIAL CIRCUIT<br>C/A NO.: 2018-CP-40-04940<br><br><br>**JOINT MOTION TO APPROVE<br>SETTLEMENT AGREEMENT** |

Peter D. Protopapas, as Receiver for Covil Corporation, an administratively revoked South Carolina corporation (the "Receiver") and First State Insurance Company and Hartford Accident and Indemnity Company (collectively, "Hartford"), jointly move the Court for an approval order relating to a settlement between the Receiver and Hartford. A proposed order is filed concurrently herewith.[1]

In support of this motion, the Receiver and Hartford respectfully state as follows:

1. This Court appointed the Receiver to marshal the assets of Covil Corporation ("Covil"), which include the insurance policies and proceeds of the insurance policies issued to Covil. The Receiver is, and has been, engaged in a series of coverage disputes with Covil's insurers, including Hartford.

2. Covil and Hartford have reached a settlement that will result in the resolution of all disputes between Covil and Hartford. The Covil-Hartford settlement agreement provides for

---

[1] The settlement agreement will be submitted *in camera* to protect its confidential provisions.

3

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968
ELECTRONICALLY FILED - 2020 Mar 05 11:53 AM - YORK - COMMON PLEAS - CASE#2015CP4602155

the transfer of funds and Hartford's claims for contribution, indemnification, subrogation and otherwise, arising under the Hartford "other insurance" provisions ("Contribution Claims") to a qualified settlement fund, subject to this Court's continuing jurisdiction, known as "Covil QSF, LLC," managed by the Receiver. The settlement represents a fair and reasonable compromise of matters in dispute between these parties and will result in exhaustion and buyout of the Hartford policies, mutual dismissal of the Receiver and Hartford respective claims against each other, dismissal of Hartford's claims against other Covil insurers, and a means of protecting Hartford from Contribution Claims asserted by other insurers.

3. The Hartford-Covil settlement agreement will be submitted *in camera* to this Court for review. The Hartford-Covil settlement agreement and its performance is contingent upon the entry of the proposed approval order.

4. The parties respectfully request that the proposed order be entered, for all of the following reasons:

a. The settlement will provide substantial funding to a qualified settlement fund for the benefit of asbestos claimants asserting claims against Covil;

b. The settlement will resolve complex coverage litigation between these two parties that has embroiled the Receiver, this Court and other courts in extensive adversarial proceedings; and

c. The settlement will provide a mechanism to avoid having Hartford re-inserted into this complex litigation while placing Hartford's Contribution Claims in the hands of the Receiver, through the qualified settlement fund, for administration under this Court's continuing jurisdiction.

Based on the foregoing, the Receiver and Hartford respectfully request that the proposed approval order be entered.

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968
ELECTRONICALLY FILED - 2020 Mar 05 11:53 AM - YORK - COMMON PLEAS - CASE#2015CP4602155

Respectfully submitted,

s/ Jescelyn T. Spitz
Jescelyn Tillman Spitz
S.C. Bar 101880
Federal Bar 12159
**Rikard & Protopapas, LLC**
1329 Blanding Street
Columbia, South Carolina 29201
Post Office Box 5640 (29250)
PH: (803)978-6111
FAX: (803)978-6112
EMAIL: jspitz@rplegalgroup.com

s/ Mark W. Hardee
Mark W. Hardee
S.C. Bar 7857
The Hardee Law Firm
2231 Devine Street
Suite 202
Columbia, South Carolina 29205
PH: (803)799-0905
EMAIL: mwhardee@bellsouth.net

s/ G. Murrell Smith, Jr.
G. Murrell Smith, Jr. (SCBar 66263)
Jonathan M. Robinson (SCBar 68285)
2725 Devine Street
Columbia, South Carolina 29205
(803) 254-5445

s/ Brady Edwards
Brady Edwards
**MORGAN, LEWIS & BOCKIUS LLP**
1000 Louisiana Street, Suite 4000
Houston, Texas 77002-5006
(713) 890-5000

*Attorneys for the Receiver*

s/ S. Wilson Quick
S. Wilson Quick
SC ID No. 101336
wquick@brookspierce.com
BROOKS, PIERCE, McLENDON,
HUMPHREY & LEONARD, LLP
P.O. Box 1800
Raleigh, North Carolina 27602
Telephone: (919) 573-6213
Facsimile: (336) 232-9214

OF COUNSEL:
James P. Ruggeri
Edward B. Parks, II
Myles D. Morrison
SHIPMAN & GOODWIN LLP
1875 K Street NW, Suite 600
Washington, D.C. 20006-1251
Telephone: (202) 469-7750
Facsimile: (202) 469-7751
JRuggeri@goodwin.com
EParks@goodwin.com
MMorrison@goodwin.com

*Attorneys for Hartford*

# EXHIBIT B

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968

STATE OF SOUTH CAROLINA ) IN THE COURT OF COMMON PLEAS
) FOR THE SIXTH JUDICIAL CIRCUIT
COUNTY OF YORK ) C/A NO.: 2015-CP-46-02155
)
ROXANNE FALLS, Individually and as )
Personal Representative of the Estate of )
CHARLOTTE GAYE SMITH, )
)
                    Plaintiffs, )          **JOINT MOTION TO APPROVE**
)          **SETTLEMENT AGREEMENT**
vs. )
)
CBS Corporation, et al., )
)
                    Defendants. )
In Re: )
)
Receivership of Covil Corporation by and )
through its Receiver Peter D. Protopapas )

STATE OF SOUTH CAROLINA ) IN THE COURT OF COMMON PLEAS
) FOR THE SIXTH JUDICIAL CIRCUIT
COUNTY OF YORK ) C/A NO.: 2015-CP-46-03456
)
TIMOTHY W. HOWE, Individually and as )
Personal Representative of the Estate of )
Wayne Ervin Howe, deceased, and Jeanette )
Howe, )
)
                    Plaintiffs, )          **JOINT MOTION TO APPROVE**
)          **SETTLEMENT AGREEMENT**
vs. )
)
Air & Liquid Systems Corporation, et al., )
)
                    Defendants. )
In Re: )
)
Receivership of Covil Corporation by and )
through its Receiver Peter D. Protopapas )

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968
ELECTRONICALLY FILED - 2020 Mar 06 2:17 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4004940

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| | FOR THE FIFTH JUDICIAL CIRCUIT |
| COUNTY OF RICHLAND | C/A NO.: 2019-CP-40-00076 |
| | |
| CHARLES T. HOPPER and REBECCA HOPPER, | |
| | |
| Plaintiffs, | **JOINT MOTION TO APPROVE** |
| | **SETTLEMENT AGREEMENT** |
| vs. | |
| | |
| Air & Liquid Systems Corporation, et al., | |
| | |
| Defendants. | |
| In Re: | |
| | |
| Receivership of Covil Corporation by and through its Receiver Peter D. Protopapas | |

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| | FOR THE FIFTH JUDICIAL CIRCUIT |
| COUNTY OF RICHLAND | C/A NO.: 2018-CP-40-04680 |
| | |
| JAMES MICHAEL HILL, | |
| | |
| Plaintiff, | **JOINT MOTION TO APPROVE** |
| | **SETTLEMENT AGREEMENT** |
| vs. | |
| | |
| Advance Auto Parts, Inc., et al., | |
| | |
| Defendants. | |
| In Re: | |
| | |
| Receivership of Covil Corporation by and through its Receiver Peter D. Protopapas | |

2

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968
ELECTRONICALLY FILED - 2020 Mar 06 2:17 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4004940

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968
ELECTRONICALLY FILED - 2020 Mar 06 2:17 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4004940

| | |
|---|---|
| STATE OF SOUTH CAROLINA )<br>)<br>COUNTY OF RICHLAND )<br>)<br>DENVER D. TAYLOR and JANICE )<br>TAYLOR, )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>Air & Liquid Systems Corporation, et al., )<br>)<br>Defendants. )<br>In Re: )<br>)<br>Receivership of Covil Corporation by and )<br>through its Receiver Peter D. Protopapas ) | IN THE COURT OF COMMON PLEAS<br>FOR THE FIFTH JUDICIAL CIRCUIT<br>C/A NO.: 2018-CP-40-04940<br><br><br>**JOINT MOTION TO APPROVE<br>SETTLEMENT AGREEMENT** |

Peter D. Protopapas, as Receiver for Covil Corporation, an administratively revoked South Carolina corporation (the "Receiver") and TIG Insurance Company, successor-in-interest to Ranger Insurance Company ("TIG Insurance Company"), jointly move the Court for an approval order relating to a settlement between the Receiver and TIG Insurance Company. A proposed order is filed concurrently herewith.[1]

In support of this motion, the Receiver and TIG Insurance Company respectfully state as follows:

1. This Court appointed the Receiver to marshal the assets of Covil Corporation ("Covil"), which include the insurance policies and proceeds of the insurance policies issued to Covil. The Receiver is, and has been, engaged in a series of coverage disputes with Covil's insurers, including TIG Insurance Company.

---

[1] The settlement agreement will be submitted *in camera* to protect its confidential provisions.

3

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968
ELECTRONICALLY FILED - 2020 Mar 06 2:17 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4004940

2.  Covil and TIG Insurance Company have reached a settlement that will result in the resolution of all disputes between Covil and TIG Insurance Company. The settlement also clarifies the status of coverage issued by Evanston Insurance Company. The Covil-TIG Insurance Company settlement agreement provides for the transfer of funds and TIG's claims for contribution, indemnification, subrogation and otherwise, arising ("Contribution Claims") to a qualified settlement fund, subject to this Court's continuing jurisdiction, known as "Covil QSF, LLC," managed by the Receiver. The settlement represents a fair and reasonable compromise of matters in dispute between these parties and will result in exhaustion and buyout of the TIG Insurance Company policies, mutual dismissal of the Receiver's and TIG's respective claims against each other, dismissal of TIG's claims against other Covil insurers, and a means of protecting TIG Insurance Company and Evanston Insurance Company from Contribution Claims asserted by other insurers.

3.  The Receiver has also determined, after full disclosure and analysis of the insurance policies and their underwriting history, that insurance policies issued by Evanston Insurance Company, are non-responsive claims-made policies. The settlement agreement recites this conclusion and includes protections for Evanston.

4.  The TIG Insurance Company-Covil settlement agreement will be submitted *in camera* to this Court for review. The TIG Insurance Company-Covil settlement agreement and its performance is contingent upon the entry of the proposed approval order.

5.  The parties respectfully request that the proposed order be entered, for all of the following reasons:

   a.  The settlement will provide substantial funding to a qualified settlement fund for the benefit of asbestos claimants asserting claims against Covil;

4

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968
ELECTRONICALLY FILED - 2020 Mar 06 2:17 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4004940

    b.    The settlement will resolve complex coverage litigation between these two parties that has embroiled the Receiver, this Court and other courts in extensive adversarial proceedings; and

    c.    The settlement will provide a mechanism to avoid having TIG Insurance Company re-inserted into this complex litigation while placing TIG's Contribution Claims in the hands of the Receiver, through the qualified settlement fund, for administration under this Court's continuing jurisdiction.

    Based on the foregoing, the Receiver and TIG Insurance Company respectfully request that the proposed approval order be entered.

    Respectfully submitted,

s/ Jescelyn T. Spitz
Jescelyn Tillman Spitz
S.C. Bar 101880
Federal Bar 12159
**Rikard & Protopapas, LLC**
1329 Blanding Street
Columbia, South Carolina 29201
Post Office Box 5640 (29250)
PH: (803)978-6111
FAX: (803)978-6112
EMAIL: jspitz@rplegalgroup.com

s/ Mark W. Hardee
Mark W. Hardee
S.C. Bar 7857
The Hardee Law Firm
2231 Devine Street
Suite 202
Columbia, South Carolina 29205
PH: (803)799-0905
EMAIL: mwhardee@bellsouth.net

s/ G. Murrell Smith, Jr.
G. Murrell Smith, Jr. (SCBar 66263)
Jonathan M. Robinson (SCBar 68285)
2725 Devine Street
Columbia, South Carolina 29205

(803) 254-5445

s/ Brady Edwards
Brady Edwards
**MORGAN, LEWIS & BOCKIUS LLP**
1000 Louisiana Street, Suite 4000
Houston, Texas 77002-5006
(713) 890-5000

*Attorneys for the Receiver*

s/ Clay H. Phillips
Clay H. Phillips
Timothy J. Fagan
SmithAmundsen, LLC
150 North Michigan Avenue-3300
Chicago, Illinois 60601
Phone 312.894.3239
Email: Tfagan@salawus.com

Matthew A. Abee (SC Bar No.: 101100)
1320 Main Street, 17th Floor
Post Office Box 11070, 29211-1070
Columbia, South Carolina 29201
Phone:  803.799.2000
EMail: matt.abee@nelsonmullins.com

*Attorneys for TIG*

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968
ELECTRONICALLY FILED - 2020 Mar 06 2:17 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4004940

# EXHIBIT C

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968
ELECTRONICALLY FILED - 2020 Mar 04 10:15 AM - YORK - COMMON PLEAS - CASE#2015CP4603456

STATE OF SOUTH CAROLINA                )     IN THE COURT OF COMMON PLEAS
                                       )     FOR THE SIXTH JUDICIAL CIRCUIT
COUNTY OF YORK                         )     C/A NO.: 2015-CP-46-02155
                                       )
                                       )
ROXANNE FALLS, Individually and as     )
Personal Representative of the Estate of )
CHARLOTTE GAYE SMITH,                  )
                                       )
              Plaintiffs,              )     JOINT MOTION TO ESTABLISH A
                                       )     QUALIFIED SETTLEMENT FUND;
                                       )     APPROVE COVIL QSF, LLC AS A
vs.                                    )     QUALIFIED SETTLEMENT FUND;
                                       )     AND RETAIN JURISDICTION OVER
CBS Corporation, et al.,               )     THE QUALIFIED SETTLEMENT FUND
                                       )
              Defendants.              )
In Re:                                 )
                                       )
Receivership of Covil Corporation by and )
through its Receiver Peter D. Protopapas )

STATE OF SOUTH CAROLINA                      IN THE COURT OF COMMON PLEAS
                                       )     FOR THE SIXTH JUDICIAL CIRCUIT
COUNTY OF YORK                         )     C/A NO.: 2015-CP-46-03456
                                       )
                                       )
TIMOTHY W. HOWE, Individually and as   )
Personal Representative of the Estate of )
Wayne Ervin Howe, deceased, and Jeanette )
Howe,                                  )
                                       )     JOINT MOTION TO ESTABLISH A
              Plaintiffs,              )     QUALIFIED SETTLEMENT FUND;
                                       )     APPROVE COVIL QSF, LLC AS A
vs.                                    )     QUALIFIED SETTLEMENT FUND;
                                       )     AND RETAIN JURISDICTION OVER
Air & Liquid Systems Corporation, et al., )     THE QUALIFIED SETTLEMENT FUND
                                       )
              Defendants.              )
In Re:                                 )
                                       )
Receivership of Covil Corporation by and )
through its Receiver Peter D. Protopapas )

STATE OF SOUTH CAROLINA )   IN THE COURT OF COMMON PLEAS
 )   FOR THE FIFTH JUDICIAL CIRCUIT
COUNTY OF RICHLAND )   C/A NO.: 2019-CP-40-00076
 )
 )
CHARLES T. HOPPER and REBECCA )
HOPPER, )
 )
                Plaintiffs, )   JOINT MOTION TO ESTABLISH A
 )   QUALIFIED SETTLEMENT FUND;
vs. )   APPROVE COVIL QSF, LLC AS A
 )   QUALIFIED SETTLEMENT FUND;
Air & Liquid Systems Corporation, et al., )   AND RETAIN JURISDICTION OVER
 )   THE QUALIFIED SETTLEMENT FUND
                Defendants. )
In Re: )
 )
Receivership of Covil Corporation by and )
through its Receiver Peter D. Protopapas )
 )

STATE OF SOUTH CAROLINA )   IN THE COURT OF COMMON PLEAS
 )   FOR THE FIFTH JUDICIAL CIRCUIT
COUNTY OF RICHLAND )   C/A NO.: 2018-CP-40-04680
 )
JAMES MICHAEL HILL, )
 )
                Plaintiff, )
 )   JOINT MOTION TO ESTABLISH A
vs. )   QUALIFIED SETTLEMENT FUND;
 )   APPROVE COVIL QSF, LLC AS A
Advance Auto Parts, Inc., et al., )   QUALIFIED SETTLEMENT FUND;
 )   AND RETAIN JURISDICTION OVER
                Defendants. )   THE QUALIFIED SETTLEMENT FUND
In Re: )
 )
Receivership of Covil Corporation by and )
through its Receiver Peter D. Protopapas )
 )

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968
ELECTRONICALLY FILED - 2020 Mar 04 10:15 AM - YORK - COMMON PLEAS - CASE#2015CP4603456

2

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968
ELECTRONICALLY FILED - 2020 Mar 04 10:15 AM - YORK - COMMON PLEAS - CASE#2015CP4603456

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | IN THE COURT OF COMMON PLEAS |
| ) | FOR THE FIFTH JUDICIAL CIRCUIT |
| COUNTY OF RICHLAND ) | C/A NO.:  2018-CP-40-04940 |
| ) | |
| DENVER D. TAYLOR and JANICE ) | |
| TAYLOR, ) | |
| ) | |
| Plaintiffs, ) | **JOINT MOTION TO ESTABLISH A** |
| ) | **QUALIFIED SETTLEMENT FUND;** |
| vs. ) | **APPROVE COVIL QSF, LLC AS A** |
| ) | **QUALIFIED SETTLEMENT FUND;** |
| Air & Liquid Systems Corporation, et al., ) | **AND RETAIN JURISDICTION OVER** |
| ) | **THE QUALIFIED SETTLEMENT FUND** |
| Defendants. ) | |
| In Re: ) | |
| ) | |
| Receivership of Covil Corporation by and ) | |
| through its Receiver Peter D. Protopapas ) | |

Peter D. Protopapas, as Receiver for Covil Corporation, an administratively revoked South Carolina corporation (the "Receiver"), First State Insurance Company and Hartford Accident and Indemnity Company (collectively, "Hartford") and TIG Insurance Company ("TIG") (collectively, the "Transferor Insurers") jointly move this Court to establish a Qualified Settlement Fund under Section 468B of the Internal Revenue Code of 1986, as amended ("I.R.C."). A proposed order is filed concurrently herewith.

In support of this joint motion, the Receiver, TIG, and Hartford respectfully state as follows:

      1.     This Court appointed the Receiver to marshall the assets of Covil Corporation ("Covil"), which include the insurance policies and proceeds of the insurance policies issued to Covil. The Receiver is, and has been, engaged in a series of coverage disputes with Covil's insurers.

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968
ELECTRONICALLY FILED - 2020 Mar 04 10:15 AM - YORK - COMMON PLEAS - CASE#2015CP4603456

2.    The Receiver, TIG and Hartford have separately entered into settlements that will result in the dismissal of the Receiver's claims against Hartford and TIG, and all of these insurers' claims against the Receiver and each other, in all courts in which actions or other proceedings between the parties are pending.  As to Hartford, the parties have entered into a final comprehensive settlement agreement titled "Confidential Settlement Agreement and Release" ("Hartford-Covil Settlement Agreement").  As to TIG, the parties have separately entered into a settlement agreement titled "Confidential Settlement Agreement And Release Between Peter D. Protopapas, As Receiver For Covil Corporation, An Administratively Revoked South Carolina Corporation And Covil QSF, LLC (the "QSF"), And TIG Insurance Company, Successor-In-Interest To Ranger Insurance Company ("TIG"), And RiverStone Claims Management, LLC ("RiverStone") (the "TIG-Covil Settlement Agreement").

3.    The Hartford-Covil Settlement Agreement provides that Hartford shall transfer funds and claims to a Qualified Settlement Fund ("Covil QSF"), as that term is defined by Section 468B of the I.R.C., and the regulations promulgated thereunder, provided that the Covil QSF is approved by this Court and that this Court keeps continuing jurisdiction over the Covil QSF.  The parties have further agreed that the Covil QSF will be a Delaware limited liability company.  Such limited liability company has been formed under the laws of the State of Delaware, and is known as ""Covil QSF LLC."  A true and correct copy of a the Certificate of Formation of the limited liability company of Covil QSF LLC as a Delaware limited liability company filed with the Secretary of State of the State of Delaware on November 21, 2019 is attached hereto as Exhibit 1. The provisions for operating and managing the Covil QSF, including the distribution of its funds and the appointment of a Manager, are set forth in the Operating Agreement for Covil QSF LLC ("Covil Operating Agreement").  A redacted copy – removing the amounts paid consistent with

4

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968
ELECTRONICALLY FILED - 2020 Mar 04 10:15 AM - YORK - COMMON PLEAS - CASE#2015CP4603456

the confidentiality provisions in the Settlement Agreements between Covil and Hartford and between Covil and TIG Insurance Company – is attached hereto as Exhibit 2. The TIG-Covil Settlement Agreement similarly provides for the transfer of funds and claims to the Covil QSF.

4.       Article 1.2 of the Operating Agreement sets forth the purposes of the Covil QSF. Those purposes include "(i) to provide funds which may be used to pay for costs incurred by the parties hereto in connection with claims, suits and demands alleging personal injury and bodily injury from alleged exposure to asbestos-containing materials ("Covil Asbestos Suits"); (ii) to provide funds to be used to pay the legal fees of the parties hereto; (iii) to provide advances to pay for legal fees and settlement costs of Covil Asbestos Suits asserted against Covil Corporation, an administratively revoked South Carolina corporation ("Covil") pending reimbursement or indemnification by other responsible third parties including (without limitation) other insurers of Covil; (iv) to secure certain future potential contingent obligations to the Insurers pursuant to the terms of the Settlement Agreements, which terms are expressly incorporated herein by reference; (v) to pay for administrative and management costs as provided for herein; and (vi) to do all things necessary or appropriate in connection with the foregoing."

5.       The Operating Agreement appoints the Receiver as the initial Manager of the Covil QSF. *See* Article 4.1. The Operating Agreement further provides that the Manager is charged with the performance of his duties as Manager, which include, among others: (i) investing the Covil QSF to maximize the amount of the fund available to provide a source of funds for the Covil Asbestos Suits; (ii) administering the Covil QSF; (iii) preparing a detailed accounting of the Covil QSF, including all receipts and disbursements, on at least an annual basis; and (iv) preparing and filing all applicable tax returns on behalf of the Covil QSF.

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968
ELECTRONICALLY FILED - 2020 Mar 04 10:15 AM - YORK - COMMON PLEAS - CASE#2015CP4603456

6.     The Operating Agreement further requires that the Covil QSF maintain at all times a minimum cash balance in order to secure and satisfy the fund purposes set forth in Article 1.2 of the Operating Agreement.

7.     The Covil QSF satisfies all requirements of a Qualified Settlement Fund pursuant to Section 468B of the I.R.C. and the regulations promulgated thereunder.  The applicable regulations provide that "[a] qualified settlement fund is a fund, account, or trust that satisfies the requirements of paragraph (c) of this section." Treas. Reg. § 1.468B-1.  The regulations further provide that a fund, account, or trust satisfies the "Qualified Settlement Fund" requirements when:

(1) It is established pursuant to an order of, or is approved by, the United States, any state (including the District of Columbia), territory, possession, or political subdivision thereof, or any agency or instrumentality (including a court of law) of any of the foregoing and is subject to the continuing jurisdiction of that governmental authority;

(2) It is established to resolve or satisfy one or more contested or uncontested claims that have resulted or may result from an event (or related series of events) that has occurred and that has given rise to at least one claim asserting liability –

    i) Under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (hereinafter referred to as CERCLA), as amended, 42 U.S.C. 9601 et seq.; or

    ii) Arising out of a tort, breach of contract, or violation of law; or

    iii) Designated by the Commissioner in a revenue ruling or revenue procedure; and

(3) The fund, account, or trust is a trust under applicable state law, or its assets are otherwise segregated from other assets of the transferor (and related persons).

Treas. Reg. § 1.468B-1(c).

8. This joint motion and the proposed order seek to satisfy the first requirement by asking this Court that the Covil QSF be established pursuant to an order of this Court, and that this Court retain continuing jurisdiction.

9. The second requirement is satisfied because the Covil QSF is being established by the settlement payments made by Hartford and separately by TIG pursuant to settlement agreements that resolve completely the alleged obligations of the insurers under the contracts of insurance issued by Hartford and by TIG's predecessor, Ranger Insurance Company.

10. Finally, the "otherwise segregated" requirement has also been met as the Operating Agreement provides that the assets are segregated from the other assets of the transferor insurers.

Based upon the foregoing, the Receiver, TIG and Hartford respectfully request that this Court enter an Order establishing the Covil QSF as a Qualified Settlement Fund under Section 468B of the I.R.C.

Respectfully submitted,

For Receiver, Court-Appointed
Representative on Behalf of Covil:

 s/ Jescelyn T. Spitz
Jescelyn Tillman Spitz, Esquire
S.C. Bar 101880
Federal Bar 12159
**Rikard & Protopapas, LLC**
1329 Blanding Street
Columbia, South Carolina 29201
Post Office Box 5640 (29250)
PH: (803)978-6111
FAX: (803)978-6112
EMAIL: jspitz@rplegalgroup.com

For Hartford:

 s/ S. Wilson Quick
S. Wilson Quick
SC ID No. 101336
wquick@brookspierce.com
BROOKS, PIERCE, McLENDON,
HUMPHREY & LEONARD, LLP
P.O. Box 1800
Raleigh, North Carolina 27602
Telephone: (919) 573-6213
Facsimile: (336) 232-9214

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968
ELECTRONICALLY FILED - 2020 Mar 04 10:15 AM - YORK - COMMON PLEAS - CASE#2015CP4603456

s/ Mark W. Hardee
Mark W. Hardee, Esquire
S.C. Bar 7857
The Hardee Law Firm
2231 Devine Street
Suite 202
Columbia, South Carolina 29205
PH: (803)799-0905
EMAIL: mwhardee@bellsouth.net

s/ G. Murrell Smith, Jr.
G. Murrell Smith, Jr. (SCBar 66263)
Jonathan M. Robinson (SCBar 68285)
2725 Devine Street
Columbia, SC 29205
(803) 254-5445

s/ Brady Edwards
Paul Anton Zevnik
(Pro Hac Forthcoming)
Brady Edwards
(Pro Hac Forthcoming)
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 739-3000

OF COUNSEL:
James P. Ruggeri
Edward B. Parks, II
Myles D. Morrison
SHIPMAN & GOODWIN LLP
1875 K Street NW, Suite 600
Washington, DC 20006-1251
Telephone: (202) 469-7750
Facsimile: (202) 469-7751
JRuggeri@goodwin.com
EParks@goodwin.com
MMorrison@goodwin.com

For TIG:

s/ Matthew A. Abee
Matthew A. Abee
South Carolina Bar No. 101100
E-Mail: matt.abee@nelsonmullins.com
1320 Main Street / 17th Floor
Post Office Box 11070 (29211-1070)
Columbia, SC 29201
(803) 799-2000

8

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968
ELECTRONICALLY FILED - 2020 Mar 04 10:15 AM - YORK - COMMON PLEAS - CASE#2015CP4603456

# Exhibit 1

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968
ELECTRONICALLY FILED - 2020 Mar 04 10:15 AM - YORK - COMMON PLEAS - CASE#2015CP4603456

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968
ELECTRONICALLY FILED - 2020 Mar 04 10:15 AM - YORK - COMMON PLEAS - CASE#2015CP4603456

# Delaware

### The First State

Page 1

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE CERTIFICATE OF FORMATION OF "COVIL QSF LLC", FILED
IN THIS OFFICE ON THE TWENTY-FIRST DAY OF NOVEMBER, A.D. 2019,
AT 5:09 O'CLOCK P.M.

Jeffrey W. Bullock, Secretary of State

7715906  8100
SR# 20198235091

You may verify this certificate online at corp.delaware.gov/authver.shtml

Authentication: 204068414
Date: 11-22-19

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968
ELECTRONICALLY FILED - 2020 Mar 04 10:15 AM - YORK - COMMON PLEAS - CASE#2015CP4603456

State of Delaware
Secretary of State
Division of Corporations
Delivered  05:09 PM 11/21/2019
FILED  05:09 PM 11/21/2019
SR  20198135091  - File Number  7716906

# STATE OF DELAWARE
## CERTIFICATE OF FORMATION
## OF LIMITED LIABILITY COMPANY

The undersigned authorized person, desiring to form a limited liability company pursuant to the Limited Liability Company Act of the State of Delaware, hereby certifies as follows:

1.   The name of the limited liability company is Covil QSF LLC.

2.   The Registered Office of the limited liability company in the State of Delaware is located at 251 Little Falls Drive, in the City of Wilmington, Zip Code 19808.  The name of the Registered Agent at such address upon whom process against this limited liability company may be served is Corporation Service Company.

By: /s/ Deana Baglanzis
Deana Baglanzis
Authorized Person

DB1/ 110036856.1

# Exhibit 2

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968
ELECTRONICALLY FILED - 2020 Mar 04 10:15 AM - YORK - COMMON PLEAS - CASE#2015CP4603456

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968
ELECTRONICALLY FILED - 2020 Mar 04 10:15 AM - YORK - COMMON PLEAS - CASE#2015CP4603456

# OPERATING AGREEMENT FOR
# COVIL QSF LLC

THIS OPERATING AGREEMENT ("Operating Agreement") is executed and declared to be effective (the "Effective Date") upon approval of this "Fund" by a court of competent jurisdiction and is entered into by Peter Protopapas in his capacity as receiver for Covil Corporation, an administratively-revoked South Carolina corporation ("Receiver") as the sole Member and the Managing Member ("the "Manager") of the limited liability company established under the law of the State of Delaware known as "Covil QSF LLC" (the "Fund") (Tax Identification No. 84-3775153).

## W I T N E S S E T H :

*WHEREAS,* in settlement of certain disputes, Hartford Fire Insurance Company, Hartford Accident and Indemnity Company and First State Insurance Company ("Hartford"), and TIG Insurance Company, successor to Ranger Insurance Company ("TIG"), also referred to as "Insurers" or "Transferors", and the Receiver, acting pursuant to his authority and solely in such capacity, have entered into certain settlement agreements ("Settlement Agreements");

*WHEREAS,* the Transferors, as set forth on Schedule 1 to this Operating Agreement, have agreed to transfer certain monies and other things of value, including specifically contribution, subrogation, "other insurance," equitable indemnity and similar rights and claims ("Contribution Claims") to the Fund;

*WHEREAS,* this Fund, together with all other additional insurance policies' proceeds or other assets that may become available to the Receiver ("Other Insurance"), will be responsible for meeting the costs and expenses of suits, claims and ancillary proceedings related to Covil Asbestos Suits (as defined below), to the extent that such Other Insurance has not paid or reimbursed such costs and expenses, but only to such extent, and to meet administrative costs and expenses of this Fund, including without limitation tax and investment fees and expenses;

*WHEREAS,* this Fund is excess of all such Other Insurance;

*WHEREAS,* the parties to this Operating Agreement acknowledge and agree that the funds and other assets and things of value transferred to the Fund and all earnings thereon or additions thereto are to be held, administered and distributed in accordance with the following provisions,

*NOW, THEREFORE,* for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the parties hereto, it is agreed as follows:

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968
ELECTRONICALLY FILED - 2020 Mar 04 10:15 AM - YORK - COMMON PLEAS - CASE#2015CP4603456

# Article I
## General Fund Provisions

1.1  Name of Fund.  This Fund shall be known as and properly referred to as the "Covil QSF LLC" or "Covil QSF."

1.2  Fund Purposes.  The purposes of this Fund shall be (i) to provide funds which may be used to pay for costs incurred by the parties hereto in connection with claims, suits and demands alleging personal injury and bodily injury from alleged exposure to asbestos-containing materials ("Covil Asbestos Suits"); (ii) to provide funds to be used to pay the legal fees of the Receiver and lawyers engaged by the Receiver; (iii) to provide advances to pay for legal fees and settlement costs of Covil Asbestos Suits asserted against Covil Corporation, an administratively revoked South Carolina corporation ("Covil") pending reimbursement or indemnification by other responsible third parties including (without limitation) Other Insurers of Covil; (iv) to secure certain future potential contingent obligations to the Insurers pursuant to the terms of the Settlement Agreements, which terms are expressly incorporated herein by reference; (v) to pay for administrative and management costs as provided for herein; and (vi) to do all things necessary or appropriate in connection with the foregoing.

1.3  Distributions and Advances; Other Insurance; Minimum Fund Balance.  Distributions from the Fund shall be made to meet Fund purposes, in the discretion of the Manager, or to meet any legal obligation of the Fund.  Advances from the Fund may be made, in lieu of a distribution, when one or more insurance companies, or other parties, are responsible for meeting fees, expenses, demands, costs or liabilities properly payable by the Fund.  The determination to make a distribution or an advance may be made in the discretion of the Manager.  Distributions or advances to pay for or fund Covil Asbestos Suits may be made at any time, pursuant to Article 1.2 (iii) of this Operating Agreement.  Payments from the Fund for Covil Asbestos Suits may be made at any time to supplement other available insurance that has been used to fund Covil Asbestos Suits or has been deposited in the Covil QSF.  In addition to the foregoing, the Fund shall at all times maintain a minimum cash deposit balance of not less than Two Million Dollars (US $2,000,000) ("Minimum Fund Balance") in order to secure and satisfy the other "Fund Purposes" as set forth in Article 1.2.  Advances from the Fund shall be evidenced by a promissory note in the form attached as Schedule 2. All advances shall be recorded as receivables.  The Minimum Fund Balance may be satisfied in part by any required minimum balance held or funds maintained in any sub-fund, including without limitation any Exclusive Sub-Fund (as defined herein), including but not limited to the TIG Sub-Fund.  The Manager has adopted or may in the future adopt certain standards for distributions or advances to meet the costs of Covil Asbestos Suits, as set forth as Schedule 3.

1.4  Fund is Irrevocable.  This Fund is irrevocable and may not be revoked, amended and modified, in whole or in part; provided, however, notwithstanding the foregoing to the contrary (i) the Manager of this Fund shall have the exclusive power and authority to petition the court that retains jurisdiction over the Covil QSF to reform this Fund, in whole or in part, to the extent said Court determines it necessary or reasonable in order for this Fund or the Manager to function or be used to serve the Fund purposes set forth herein and to serve and meet the needs

2

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968
ELECTRONICALLY FILED - 2020 Mar 04 10:15 AM - YORK - COMMON PLEAS - CASE#2015CP4603456

of the parties hereto, and (ii) upon written agreement of each of the parties hereto and without approval of the Court, the Fund instrument may be amended to accomplish one or more of the purposes of the Fund as set forth herein, to maintain the Fund's qualification as a Qualified Settlement Fund as set forth below or to transfer the Fund to a successor escrow fund, trust or other entity designated by the parties hereto which will carry out the purposes of this Fund. Notwithstanding the provisions of this Section 1.4, neither the Fund nor the Manager of the Fund may amend the terms of the Operating Agreement to the detriment of the Transferors or to otherwise make the Fund or the Operating Agreement inconsistent with the terms and conditions of the Settlement Agreements.

1.5    Separate and Independent Fund.  This Fund shall at all times be held and remain as a separate and independent fund.

1.6    Duration of Fund.  This Fund shall remain in existence for a period of approximately thirty (30) years from the date of its creation, until December 31, 2049, or until such earlier date as the Fund is exhausted or the court which has kept jurisdiction over the QSF has approved a distribution of the Fund as set forth in Section 3.4 below (the "Termination Date").

1.7    Situs of Fund.  This Fund shall have as its situs Columbia, South Carolina; provided, however, that in the event the Manager deems it in the best interest of the Fund and the potential distributees of funds hereunder, the Manager may establish some or all of the Fund assets and/or the situs of the Fund in any other state or judicial district within the continental United States, including (without limitation) the District of Columbia.

1.8    Definitions.  All terms shall have the meanings set forth in the Settlement Agreements or in this Operating Agreement, and any governing instrument applicable to its Managers.

1.9    The Settlement Agreements.  All provisions of the Settlement Agreements are incorporated herein, and, to the maximum extent permitted by law, the Fund and the Fund Manager agree to be bound by the terms and conditions of the Settlement Agreements.

1.10    Sub-Funds.  This Fund shall have the authority to create and maintain separate Sub-Funds which shall be separate and independent funds, in accordance with the documentary requirements establishing such Sub-Funds, but subject at all times to the general terms of this Operating Agreement and any and all orders establishing the Fund and retaining jurisdiction over this Fund or modifying the terms of such order or of this Operating Agreement.  The Manager of the Fund may form one or more Sub-Funds at any time, in his discretion, including (without limitation) Sub-Funds that are designated for a specific liability or settlement, Sub-Funds that are for the exclusive benefit of one or more Beneficiaries, or Sub-Funds that may secure or provide for the satisfaction of a specific obligation, contingent or otherwise.  An "Exclusive Sub-Fund" may be established solely for the benefit of a third party.  The Manager is hereby directed and authorized to establish up to three Exclusive Sub-Funds, with one Exclusive Sub-Fund known as the "TIG Sub-Fund," which shall be governed by this Operating Agreement and pertinent

provisions of the TIG Settlement Agreement. The Manager may hereafter establish two additional Exclusive Sub-Funds which shall be governed by this Operating Agreement and pertinent provisions of any pertinent settlement agreement.

## Article II
## Deposits By Insurers

2.1    Deposit of Cash and Claims.  The Insurers shall fund the Covil QSF with the "Settlement Amount," as defined by their respective Settlement Agreements, and claims assigned to the Covil QSF pursuant to the terms of the Settlement Agreements, referred to as "Contribution Claims."

2.2    Maintenance of Funds.  The funds deposited by the Insurers shall be invested and maintained as provided for by Article V of this Operating Agreement.

## Article III
## Funding, Distributions and Advances

3.1    Limitation on Distributions and Advances.  No funding shall be made into this Fund and no distribution or advance may be made from the Fund until and unless (i) joint written instructions are received from the Transferors and the Receiver consistent with the terms of the Settlement Agreements; (ii) an order is received from a court of competent jurisdiction approving the Covil QSF as part of the Settlement Agreements; and (iii) the foregoing court has retained continuing jurisdiction over this Fund.  The foregoing conditions are referred to in this Article III as the "Conditions Precedent."

3.2    Distributions or Advances For Covil Asbestos Suits.  The Manager may make distributions to pay for the costs and expenses of meeting Covil Asbestos Suit obligations to the extent there is no other responsive insurance or responsible party for meeting such expenses.  To the extent such expenses are the responsibility of third parties, the Manager may advance funds to pay for the costs and expenses of defending against and paying otherwise unreimbursed expenses associated with the defense and settlement of Covil Asbestos Suits ("Asbestos Claim Expenses"), pending reimbursement of such asbestos claim expenses by otherwise responsible parties including (without limitation) the liability insurers of Covil.  Such advances will be repaid upon receipt of such funds from responsible parties, and, pending receipt of such reimbursements, shall bear and cumulate interest at the rate of five percent (5.00%) simple interest per annum.  To the extent funds are not received from third parties to pay for the Asbestos Claim Expenses subject of such advances on or prior to the Date of Termination of the Fund, then the obligation to repay such advances shall be canceled and voided *ab initio*.  Any and all advances shall be documented by one or more promissory notes in the form annexed as Schedule 2 to this Operating Agreement.  Any restriction on distributions or advances shall be set forth in Schedule 3.

3.3    Distributions.  When permitted to do so, the Manager shall make distributions to pay Asbestos Claim Expenses as follows:

4

(a).    The Manager shall make distributions hereunder solely with respect to qualifying liabilities as defined in Section 1.468B-1(c) of the Treasury Regulations;

(b).    Prior to making any such distribution, the Receiver shall present Required Documentation (as defined herein) to substantiate that qualifying expenditures have been paid or incurred;

(c).    Required Documentation shall consist of a declaration under penalty of perjury signed by the Receiver to the effect that qualifying expenditures have been incurred (the "Declaration") in the form annexed at Schedule 4, together with copies of any relevant invoices; and

(d).    Receipt of the Declaration and invoices the Receiver shall constitute conclusive proof that claim expenditures have been paid or incurred. Receipt of the signed Declaration and invoices shall relieve the Manager of any duties or obligations of any kind or nature to verify that expenditures were paid or incurred.

3.4.    <u>Distribution Upon Expiration of Term of Fund</u>. In the event this Fund shall be in existence at the expiration of approximately thirty (30) years from the date of its creation, *i.e.*, December 31, 2049, this Fund shall terminate and the Manager shall, within a reasonable time thereafter and, after paying all accrued administrative expenses, taxes and other obligations of the Fund, distribute the remaining income and principal of this Fund to the extent of its unreimbursed or incurred Asbestos Claim Expenses as provided for herein, distribute all sub-funds as required pursuant to documents establishing such sub-funds, and, if there is any remaining income and principal of this Fund, to a qualified Section 501(c)(3) organization or organizations which have been organized and operated exclusively for charitable or educational purposes as designated in writing by the Manager from the approved organizations listed in Schedule 5 to this Operating Agreement.

**Article IV**
**Manager**

4.1    <u>Initial Manager</u>. The Receiver is hereby appointed and named as the Manager of this Fund, and such appointment shall become effective upon the acceptance of such responsibilities by execution of this Operating Agreement. The Receiver in his capacity as Manager may form a legal entity, including a corporation, partnership, trust, limited liability company, or limited partnership, to act as the Manager so long as the Receiver has control, voting or otherwise, over the entity.

4.2    <u>Successor Managers</u>. All successor Managers of this Fund shall be appointed by the Receiver or the successor receivers of Covil, subject at all times to approval by the Court, if and to the extent required.

5

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968
ELECTRONICALLY FILED - 2020 Mar 04 10:15 AM - YORK - COMMON PLEAS - CASE#2015CP4603456

4.3    Resignation and Removal.  Subject to the Receiver Order, including any amended or supplemental Receiver Order, a Manager of this Fund may resign at any time upon ten (10) days written advance notice to each of the parties hereto, or may be removed by the Court by petition of an interested party.  Each resigned or removed Manager shall execute all documents and do all acts necessary to vest title of the Fund in the successor Manager.  No successor Manager shall be personally responsible for any act or failure to act of a predecessor Manager.

4.4    Fees and Expenses of Manager.  The Manager shall be entitled to reasonable compensation for the performance of his duties as Manager.  The Manager is entitled to pay reasonable fees and expenses of other parties the Manager employs or retains to assist the Manager with the administration of this Fund, including but not limited to attorneys, accountants, and such other agents and consultants as the Manager, in his sole discretion, deems appropriate to accomplish the purposes of this Fund, *provided, however,* employment and payment of such parties' fees and expenses by the Manager shall not diminish the compensation of the Manager.  Such compensation, fees and expenses shall be paid currently and be a proper expense of the income or principal or both of the Fund.

4.5    Indemnification.  The Manager shall not be liable, except for his own gross negligence or willful misconduct and, except with respect to claims based on such gross negligence or willful misconduct that are successfully asserted against the Manager.  Except as provided in the preceding sentence, this Fund shall and hereby agrees to indemnify and hold harmless the Manager (and any successor Manager) from and against any and all losses, liabilities, claims, actions, damages and expenses, including reasonable attorneys' fees and disbursements, arising out of and in connection with this Fund. In no event shall the Manager be liable for indirect, punitive, special or consequential damages.

## Article V
## Investment of Fund

5.1    General Intent.  It is the purpose and intent of this Fund to maximize the amount of the Fund, including investment income, available to provide a source of funds for Asbestos Claim Expenses.

## Article VI
## Fund Administration, Record Keeping and Accountings

6.1    Fund Administration.  This Fund shall be administered by the Manager free of the supervision of the Court, and the Manager may administer this Fund and the assets of this Fund without prior or subsequent Court approval or orders; *provided, however,* nothing herein shall prevent the Manager hereof, in the Manager's sole discretion, from seeking and receiving a declaratory judgment from the Court when the Manager deems same appropriate in connection with any matter involving the administration of the Fund. Further, to the extent any of the provisions of this Operating Agreement is incomplete or unclear, there is a change in applicable law, including tax laws, or there is a change in circumstances that frustrates the intent and purpose of this Fund, or is detrimental to Covil, the Manager, in the sole discretion of the

6

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968
ELECTRONICALLY FILED - 2020 Mar 04 10:15 AM - YORK - COMMON PLEAS - CASE#2015CP4603456

Manager, is authorized and empowered to have the Court, upon notice to all parties hereto, reform this Operating Agreement.

6.2    Fund Accounting.  The Fund shall prepare no less often than annually a detailed Fund accounting setting forth all receipts and disbursements to or from this Fund, as well as the beginning and ending inventory of Fund assets, in accordance with the Manager's generally provided fiduciary accountings. Given the nature of this Fund, it is specifically directed that the Manager shall not be obligated to prepare its accounting reflecting transactions of this Fund as both income or principal receipts and disbursements, and instead, may account for the receipts and disbursements of this Fund without differentiation as to income or principal transactions. In this respect, the Manager is specifically authorized and directed not to account for the transactions applicable to this Fund under or in accordance with any applicable state statutes generally known as the Principal and Income Acts.

6.3    No Court Approval of Accounting.  The Manager shall not be required to file with the Court any inventories or accountings, nor shall the Manager be required to qualify or otherwise be approved by the Court.  No Manager serving hereunder shall be obligated to file any bond or secure the faithful performance of his duties hereunder.

**Article VII**
**Powers of Manager**

7.1    General Powers.  Except as otherwise specifically provided herein, the initial Manager named herein, as well as all successor Managers of this Fund, shall have full power and authority to administer this Fund and the assets contained herein, which powers and authority shall include all the powers and authority set forth herein as well as all other powers and authority conferred by applicable law.  The initial Manager and all Successor Managers shall have the power and authority to name agents and to designate functions and responsibilities to such agents, subject at all times to the powers and supervision of the Manager and to the provisions of this Fund.

**Article VIII**
**Tax Matters - § 468B Qualified Settlement Fund**

8.1    The Manager shall take all actions which are consistent with classification of the Fund as a Qualified Settlement Fund within the meaning of Regulations Section 1.468B-1, *et seq.*, such that all transfers to the Fund by any Transferor will be excludable from the gross income of the Fund.

8.2    Upon establishment of the Fund and in accordance with Regulations Section 1.468B-2(k)(4), the Manager shall apply for an Employer Identification Number or shall have previously obtained for the Manager pursuant to Internal Revenue Service Form SS-4.

8.3    If applicable, the Manager and all applicable Transferors, or any Transferor as the case may be, shall fully cooperate in filing a relation-back election under Regulations Section

7

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968
ELECTRONICALLY FILED - 2020 Mar 04 10:15 AM - YORK - COMMON PLEAS - CASE#2015CP4603456

1.468B-1(j)(2) to treat the Fund as coming into existence as a qualified settlement fund as of the earliest possible date.

      8.4    In accordance with Regulations Section 1.468B-2(k)(1), the Manager shall cause to be filed, on behalf of the Fund, all required federal, state and local tax returns. Each Transferor shall supply to the Manager and to the United States Internal Revenue Service the statement described in the Regulations no later than February 15 of the year following the calendar year in which such Transferor makes a transfer to the Fund.

      8.5    In accordance with Regulations Section 1.468B-2(j), the taxable year of the Fund shall be the calendar year and the Fund shall use an accrual method of accounting, within the meaning of Regulations Section 446(c).

      8.6    Anything in this Operating Agreement to the contrary notwithstanding, the Manager shall take all such actions as he deems necessary to comply with applicable laws to assure that the Fund will be treated as a Qualified Settlement Fund under Code Section 468B and the Treasury Regulations promulgated thereunder. Further, the Manager may amend, either in whole or in part, any administrative provision of this Operating Agreement which causes unanticipated tax consequences or liabilities inconsistent with the foregoing, or conform to the administrative provisions of this Operating Agreement Fund to the requirements of taxing authorities or tax counsel to the Fund.

### Article IX
### Miscellaneous Provisions

      9.1    <u>Notices</u>. In the event any party hereto shall desire or be required to give notice to any other party hereto, then such notice shall be in writing addressed to the party who is to receive such notice and deposited in the United States mail with postage prepaid and sent registered or certified mail, return receipt requested, to the following addresses:

If to the Receiver:                Peter D. Protopapas
                                        Receiver, Covil Corporation
                                        Rikard & Protopapas, LLC
                                        1329 Blanding Street
                                        Columbia, South Carolina 29201
                                        E-mail: pdp@rplegalgroup.com

with a copy to:                Brady Edwards
                                          Morgan, Lewis & Bockius LLP
                                        1000 Louisiana Street, Suite 4000
                                        Houston, Texas 77002-5006
                                        E-mail: brady.edwards@morganlewis.com

If to Hartford:                Sean Johnston
                                          Vice President

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968
ELECTRONICALLY FILED - 2020 Mar 04 10:15 AM - YORK - COMMON PLEAS - CASE#2015CP4603456

The Hartford
One Hartford Plaza
Hartford, Connecticut  06155
E-mail:  Sean.Johnston@thehartford.com

If to TIG:

Robert Sampson
Executive Vice President
RiverStone Claims Management LLC
250 Commercial Street, Suite 5000
Manchester, New Hampshire 03101
Email:  Robert_Sampson@trg.com

with a copy to:

Timothy J. Fagan
SmithAmundsen LLC
150 North Michigan Avenue-3300
Chicago, Illinois  60601
Phone:  312.894.3239
Email: Tfagan@salawus.com

In the event any party hereto desires to change the address to which its notices shall be sent, or in the event any party shall relocate or change its address, such party shall immediately provide notice as herein provided to each of the other parties hereto.  In addition, this section shall be amended to include information for any additional Transferor.

Notices shall be deemed received for all purposes related to this Operating Agreement five (5) business days after the mailing of such notice as herein provided, whether or not a party to whom a notice is sent accepts delivery of such notice or for any other reason fails to receive such notice. It shall be the responsibility of each party to keep informed all the other parties as to their current address. Further, each successor or substitute to a party listed herein shall be bound by the terms of these notice provisions the same as if such successor or substitute party was an initial party to this Operating Agreement.

9.2    Binding Effect.  This Operating Agreement shall be binding upon each of the parties hereto, and each party's successor, and assign (to the extent permitted under this Operating Agreement).

9.3    Paragraph Captions and Severability of Provisions.  The captions for each of the paragraphs are for convenience only and are not intended to have any specific meaning. Each of the provisions of this Operating Agreement is separate and severable, and if a provision of this Operating Agreement is determined by the Court to be unenforceable, the remaining provisions of this Operating Agreement shall remain in full force and effect.

9.4    Applicable Law.  This Fund and the Operating Agreement shall be governed and interpreted in accordance with the internal law of the State of Delaware, except as respects the

9

Fund's rights in and to Contribution Claims which shall be governed by the internal law of the State of South Carolina and except as respects tax matters, which shall be governed by federal law, specifically the Internal Revenue Code.

IN WITNESS WHEREOF, this Operating Agreement has been signed and sealed by the parties hereto to be effective and irrevocable on the day and year first above-written.

RECEIVER OF COVIL CORPORATION,
an administrative-revoked South Carolina
corporation,

By: _____
Name: Peter D Protopapas
Title: Manager Receiver
Date: 3/4/20

Accepted and agreed:

MANAGER

By: _____
Name: Peter Protopapas
Title: Manager
Date: 3/4/20

10

## Schedule 1 to Operating Agreement

| Name and Addresses of Transferors: | Amount Transferred |
|---|---|
| First State Insurance Company<br>Hartford Accident and Indemnity Company<br>One Hartford Plaza<br>Hartford, Connecticut  06155 | [        ] |
| Ranger Insurance Company, now known as<br>TIG Insurance Company<br>c/o RiverStone Claims Management LLC<br>250 Commercial Street, Suite 5000<br>Manchester , New Hampshire   03101 | [        ] |

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968
ELECTRONICALLY FILED - 2020 Mar 04 10:15 AM - YORK - COMMON PLEAS - CASE#2015CP4603456

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968
ELECTRONICALLY FILED - 2020 Mar 04 10:15 AM - YORK - COMMON PLEAS - CASE#2015CP4603456

## Schedule 2 to Operating Agreement

### [FORM OF PROMISSORY NOTE FOR ADVANCES FOR ASBESTOS CLAIM EXPENSES]

$_____                                    _____
                                                            Date

  For value received, _____ ("Maker"), promises to pay to the Covil QSF LLC ("Payee"), in lawful money of the United States of America, the principal sum of _____ Dollars (US $_____), together with interest in arrears on the unpaid principal balance at an annual rate equal to five percent (5%) simple interest, in the manner provided below.  Interest shall be calculated on the basis of a year of 365 or 366 days, as applicable, and charged for the actual number of days elapsed.

  This Note has been executed and delivered pursuant to and in accordance with the terms and conditions of the Covil QSF LLC Operating Agreement (the "Agreement"), and is subject to the terms and conditions of the Agreement, which are, by this reference, incorporated herein and made a part hereof. Capitalized terms used in this Note without definition shall have the respective meanings set forth in the Agreement.

  1. Payments.

   1.1  Principal and Interest.  The principal amount of this Note and all accrued but unpaid interest shall be payable concurrently with the receipt of reimbursement from a third party (including liability insurers) by Maker with respect to Asbestos Claim Expenses (as defined in Section 2.01 of the Agreement). Such payment shall be made on a dollar-for-dollar basis to the extent of such third party reimbursements, and any remaining unpaid principal and interest shall be repaid concurrently with the receipt of additional reimbursements from third parties with respect to Asbestos Claim Expenses. To the extent such third party reimbursements are not received for Asbestos Claim Expenses with respect to which funds have been advanced pursuant to the terms of this Note within thirty (30) years from the effective date of the Agreement, Maker's obligation to repay any sums pursuant to this Note shall be canceled and voided *ab initio*.

   1.2  Manner of Payment.  All payments of principal and interest on this Note shall be made by check at Columbia, South Carolina or at such other place in the United States of America as Payee shall designate to Maker in writing or by wire transfer of immediately available funds to an account designated by Payee in writing. If any payment of principal or interest on this Note is due on a day which is not a Business Day, such payment shall be due on the next succeeding Business Day, and such extension of time shall be taken into account in calculating the amount of interest payable under this Note.  "Business Day" means any day other than a Saturday, Sunday or legal holiday in the State of South Carolina.

   1.3  Prepayment.  Maker may, without premium or penalty, at any time and from time to time, prepay all or any portion of the outstanding principal balance due under this

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968
ELECTRONICALLY FILED - 2020 Mar 04 10:15 AM - YORK - COMMON PLEAS - CASE#2015CP4603456

Note, provided that each such prepayment is accompanied by accrued interest on the amount of principal prepaid calculated to the date of such prepayment.

2. Defaults.

2.1    Events of Default. The occurrence of any one or more of the following events with respect to Maker shall constitute an event of default hereunder ("Event of Default"):

(a).    If Maker shall fail to pay when due any payment of principal or interest on this Note and such failure continues for fifteen (15) days after Payee notifies Maker therein writing.

(b).    If, pursuant to or within the meaning of the United States Bankruptcy Code or any other federal or state law relating to insolvency or relief of debtors (a "Bankruptcy Law"), Maker shall (i) commence a voluntary case or proceeding; (ii) consent to the entry of an order for relief against it in an involuntary case; (iii) consent to the appointment of a trustee, receiver, assignee, liquidator or similar official; (iv) make an assignment for the benefit of its creditors; or (v) admit in writing its inability to pay its debts as they become due.

(c).    If a court of competent jurisdiction enters an order or decree under any Bankruptcy Law that (i) is for relief against Maker in an involuntary case, (ii) appoints a trustee, receiver, assignee, liquidator or similar official for Maker or substantially all of Maker's properties, or (iii) orders the liquidation of Maker, and in each case the order or decree is not dismissed within 120 days.

(d).    Notice by Maker.  Maker shall notify Payee in writing within five days after the occurrence of any Event of Default of which Maker acquires knowledge.

2.2    Remedies. Upon the occurrence of an Event of Default hereunder (unless all Events of Default have been cured or waived by Payee), Payee may, at its option (i) by written notice to Maker, declare the entire unpaid principal balance of this Note, together with all accrued interest thereon, immediately due and payable regardless of any prior forbearance, and (ii) exercise any and all rights and remedies available to it under applicable law, including, without limitation, the right to collect from Maker all sums due under this Note. Maker shall pay all reasonable costs and expenses incurred by or on behalf of Payee in connection with Payee's exercise of any or all of its rights and remedies under this Note, including, without limitation, reasonable attorneys' fees.

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968
ELECTRONICALLY FILED - 2020 Mar 04 10:15 AM - YORK - COMMON PLEAS - CASE#2015CP4603456

3.        Miscellaneous

3.1.        Waiver.  The rights and remedies of Payee under this Note shall be cumulative and not alternative. No waiver by Payee of any right or remedy under this Note shall be effective unless in a writing signed by Payee. Neither the failure nor any delay in exercising any right, power or privilege under this Note will operate as a waiver of such right, power or privilege and no single or partial exercise of any such right, power or privilege by Payee will preclude any other or further exercise of such right, power or privilege by Payee. To the maximum extent permitted by applicable law, (a) no claim or right of Payee arising out of this Note can be discharged by Payee, in whole or in part, by a waiver or renunciation of the claim or right unless in a writing signed by Payee; (b) no waiver that may be given by Payee will be applicable except in the specific instance for which it is given, and (c) no notice to or demand on Maker will be deemed to be a waiver of any obligation of Maker or of the right of Payee to take further action without notice or demand as provided in this Note. Maker hereby waives presentment, demand, protest and notice of dishonor and protest.

3.2.        Notices.  Any notice required or permitted to be given hereunder shall be given in accordance with the Operating Agreement.

3.3.        Severability. If any provision in this Note is held invalid or unenforceable by any court of competent jurisdiction, the other provisions of this Note will remain in full force and effect. Any provision of this Note held invalid and unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable.

3.4.        Governing Law.  This Note will be governed by the law of the State of South Carolina without regard to conflict of laws principles.

3.5.        Parties in Interest.  This Note shall bind Maker and its successors and assigns. This Note shall not be assigned or transferred by Payee without the express prior written consent of Maker, except by will or, in default thereof, by operation of law.

3.6.        Section Headings, Construction.  The headings of Sections in this Note are provided for convenience only and will not affect its construction or interpretation. All references to "Section" or "Sections" refer to the corresponding Section or Sections of this Note unless otherwise specified.

All words used in this Note will be construed to be of such gender or number as the circumstances require. Unless otherwise expressly provided, the words "hereof" and "hereunder" and similar references refer to this Note in its entirety and not to any specific section or subsection hereof.

IN WITNESS WHEREOF, Maker has executed and delivered this Note as of this date first stated above.

By:_____

Name:_____

Title:_____

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968
ELECTRONICALLY FILED - 2020 Mar 04 10:15 AM - YORK - COMMON PLEAS - CASE#2015CP4603456

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968
ELECTRONICALLY FILED - 2020 Mar 04 10:15 AM - YORK - COMMON PLEAS - CASE#2015CP4603456

## Schedule 3 to Operating Agreement

## Claims Handling Criteria and Guidelines

**Schedule 4 to Operating Agreement**

**[DECLARATION CONCERNING ASBESTOS CLAIM EXPENSES]**

      I, _____, hereby certify that the Receiver for COVIL CORPORATION, has incurred Asbestos Claim Expenses in the amount of $_____, consisting of the following:

| **Payee** | **Amount** |
|-----------|------------|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

Copies of invoices for the expenditures, all of which have been paid in full, shall be maintained at the corporate headquarters and are available for inspection by representatives of the Receiver/Manager during regular business hours upon reasonable notice.

**RECEIVER FOR COVIL
CORPORATION, an administratively-
revoked South Carolina corporation**

Dated:_____

By:_____
Title:_____

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968
ELECTRONICALLY FILED - 2020 Mar 04 10:15 AM - YORK - COMMON PLEAS - CASE#2015CP4603456

ELECTRONICALLY FILED - 2020 Mar 13 4:46 PM - SPARTANBURG - COMMON PLEAS - CASE#2019CP4203968
ELECTRONICALLY FILED - 2020 Mar 04 10:15 AM - YORK - COMMON PLEAS - CASE#2015CP4603456

## Schedule 5 to Operating Agreement

The residuary beneficiaries are as follows:

> College of Charleston
>
> Clemson University
>
> University of South Carolina

The Manager reserves the right to add or substitute other universities to the list provided above and to determine the final allocation of the funds to each residuary beneficiary at any time on or before the termination of the Covil QSF, as provided for by Sections 1.6 and 3.4 of the Operating Agreement.