UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Covil Corporation By Its Duly Appointed, Receiver, Peter D. Protopapas, )<br><br>Plaintiff, )<br><br>vs. )<br><br>Zurich American Insurance Company; Sentry Casualty Company; United States Fidelity and Guaranty Company; TIG Insurance Company, As Successor in Interest to Fairmont Specialty Insurance Company, F/K/A Ranger Insurance Company; Hartford Accident And Indemnity Company; First State Insurance Company; Timothy W. Howe, Personal Representative Of Wayne Erwin Howe; Jeannette Howe; Jerry Crawford; Denver Taylor And Janice Taylor; and James Coleman Sizemore, Personal Representative Of James Calvin Sizemore, )<br><br>Defendants. ) | Civil Action No. 7:18-3291-BHH<br><br>**OPINION AND ORDER** |

This matter is before the Court on Plaintiff Covil Corporation's ("Covil") motion for

clarification and/or reconsideration of the Court's Opinion and Order issued February 27,

2020 (ECF No. 109), Covil's motion to reconsider the Court's prior ruling denying remand

to state court (ECF No. 116), Defendant United States Fidelity and Guaranty Company's

("USF&G") motion to enforce this Court's permanent injunction and motion for expedited

briefing and ruling (ECF No. 142), and USF&G's motion to enforce this Court's February

27, 2020 injunction and to hold Covil, the Receiver, and his counsel in contempt for

1

violating the injunction (ECF No. 193). For the reasons set forth in this Order, Covil's motion to reconsider the Court's February 27, 2020 Order is granted and all other motions are denied.

## BACKGROUND

This is an insurance coverage action in which the parties dispute the relative rights and obligations of Covil, its Receiver, and certain of Covil's insurers under policies issued or allegedly issued to Covil. Among other issues, the parties dispute the manner in which it should be determined whether injuries in underlying asbestos actions are within the products and completed operations hazard of the policies (rendering them subject to an aggregate limit), or outside the products and completed operations hazard (in which case no aggregate limit would apply), as well as the proper method for allocating injury across multiple policy years. (*See* Compl., ECF Nos. 1-1 & 1-2; Countercl., ECF No. 10.)

Peter D. Protopapas was appointed by the Honorable Jean H. Toal (Chief Justice Ret.) ("Justice Toal"), pursuant to South Carolina Code § 15-65-10, as Receiver for Covil Corporation, a dissolved South Carolina Corporation, on November 2, 2018. (ECF No. 80-1.) The order of appointment stated that the Receiver was vested with "the power and authority to fully administer all assets of Covil Corporation," including "the right and obligation to administer any insurance assets of Covil Corporation as well as any claims related to the actions or failure to act of Covil's insurance carriers." (*Id.* at 1.)

The Receiver originally filed this action in state court on November 27, 2018, naming USF&G and several other insurance carriers as Defendants, along with several individual asbestos plaintiffs who brought claims against Covil. (*See* Compl.) Defendant Sentry Insurance a Mutual Company ("Sentry") removed the case to federal court based

on its contention that diversity jurisdiction existed under 28 U.S.C. § 1332. (*See* ECF No. 1, ¶¶ 10–31.) This Court subsequently entered an Order realigning the Co-Defendants, and finding that it now possessed diversity jurisdiction, denied the Receiver's motion to remand. (ECF No. 67.) A few months after removal, Defendant Hartford Accident and Indemnity Company ("Hartford") filed its motion to enjoin the Receiver. (ECF No. 69.) USF&G moved to join in Hartford's motion. (ECF Nos. 73, 87.)

On February 27, 2020, this Court entered an Opinion and Order ("Injunction Order") granting Hartford's motion to enjoin the Receiver and USF&G's motion for joinder in part. (ECF No. 105, at 1–2.) Thereafter, the Receiver filed a motion for clarification and/or reconsideration of the Injunction Order, and a motion for reconsideration of the Court's Order denying remand. (ECF Nos. 109 & 116.) USF&G filed two motions to enforce the Injunction Order, seeking findings of contempt against Covil, the Receiver, and his counsel, and sanctions awards for the same. (ECF Nos. 142 & 193.)

USF&G is the only remaining active insurer Defendant. Hartford, Sentry, TIG Insurance Company ("TIG") have all been dismissed from this case. Covil and Zurich American Insurance Company ("Zurich") have also reached a settlement, and pursuant to their joint motion to dismiss the Court has dismissed with prejudice certain allegations they have asserted against one another. (ECF No. 204.) USF&G's most recent motion to enforce the Injunction Order (ECF No. 193) is based on the Receiver having filed a motion for partial summary judgment in a separate but related matter, which this Court remanded to state court on June 4, 2020. *See Finch v. Sentry Cas. Co. et al.*, No. 3:19-cv-1827-BHH (D.S.C.) ("Finch Action"), ECF No. 55. The Receiver moved for partial summary judgment in the Finch Action on declaratory judgment crossclaims that are, in substance,

the same as those that the Receiver asserted against the insurer Defendants at the time this Court remanded the Finch Action.

## LEGAL STANDARD

Because an injunction is appealable, the Injunction Order constitutes a "judgment" under Federal Rule of Civil Procedure 54(a), and the Receiver's motion for reconsideration constitutes a motion to alter or amend a judgment under Rule 59(e). *See, e.g.*, *Centennial Broad., LLC v. Burns*, 433 F. Supp. 2d 730, 733 (W.D. Va. 2006). A court may grant a motion for reconsideration under Rule 59(e) "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007) (citation and quotation marks omitted). "Thus, the rule permits a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (citation and quotation marks omitted). "The ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003)

## DISCUSSION

### A. Reconsideration of Injunction Order

The All-Writs Act authorizes district courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Such "writs" include injunctions against state court proceedings. However, this authority is limited by the Anti-Injunction Act, which provides: "A court of the United States may not grant an injunction to stay proceedings in a State

court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. "The [Anti-Injunction] Act's core message is one of respect for state courts." *Smith v. Bayer Corp.*, 564 U.S. 299, 306 (2011). It broadly directs that state tribunals "shall remain free from interference by federal courts." *Atl. Coast Line R. Co. v. Bhd. of Locomotive Engineers*, 398 U.S. 281, 282 (1970). Any exception should be "narrow", *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988), and "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed." *Atl. Coast*, 398 U.S. at 297. As the Court noted in the Injunction Order, the U.S. Supreme Court has cautioned lower courts regarding interpretation of the exceptions to the Anti-Injunction Act:

> [S]ince the statutory prohibition against [injunctions of state court proceedings] in part rests on the fundamental constitutional independence of the States and their courts, the exceptions should not be enlarged by loose statutory construction. Proceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately this Court.

*Id.* at 287.

In *Ackerman v. ExxonMobil Corp.*, 734 F.3d 237 (4th Cir. 2013), property owners brought in June 2004 an action in state court against a gasoline manufacturer and gasoline station owner alleging contamination of their properties. The defendants removed the action to federal court by invoking federal officer jurisdiction pursuant to 28 U.S.C. § 1442(a). However, a later ruling by the Second Circuit in an unrelated case made it clear that the history of the contaminant's ("MTBE") production and marketing did not support federal officer removal, and the case was remanded to state court. After granting

the property owners' motion for class certification, the state court judge *sua sponte* reconsidered his ruling, decertified the class, and asked the plaintiffs to file a new action naming the former class members as plaintiffs so that he could consolidate it with the existing action and adjudicate all the plaintiffs' claims together. As a result, more than 750 former class members filed a second action in the state court alleging the same facts and state law claims. The state court judge delayed issuing a consolidation order while he was considering certain questions concerning the logistics of trial. Thereafter, the defendants removed the second action under the Energy Policy Act of 2005, which authorizes the removal of claims related to MTBE and actions filed after August 8, 2005. The plaintiffs in the first action then amended their state-court complaint to add all the individual plaintiffs named in the second action and the defendants did not remove the first action or ask the state court to strike the amendment. The federal district court granted the property owners' motion to abstain from exercising jurisdiction over the second action pursuant to *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), and the defendants appealed. The Fourth Circuit affirmed and held that the prohibition under the removal statute against post-removal proceedings in the state court, 28 U.S.C. § 1446(d), did not extend beyond the removed case; thus, amendment of the first state court action to add the individual plaintiffs named in the removed, second action was not void. *Ackerman*, 734 F.3d at 250. The *Ackerman* court further held that operation of the removal statute to prohibit post-removal proceedings, in conjunction with the "expressly authorized" exception to the Anti-Injunction Act, did not render the amendment of the complaint in the first action void. *Id.* at 252–53.

With respect to the removal statute's prohibition on post-removal proceedings in

state court, the Fourth Circuit explained:

> Section 1446(d) . . . speaks only in terms *of the removed case*. *See* 28
> U.S.C. § 1446(d) ("Promptly after the filing of such notice of removal of *a
> civil action* . . . ." (emphasis added)); *id.* ("[T]he State court shall proceed no
> further unless and until *the case* is remanded." (emphasis added)). Because
> the statute focuses only on the removed case, it deprives the state court of
> jurisdiction and restricts the state court's actions *only* as to the removed
> case. *See Kansas Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*
> ("*KPERS*"), 77 F.3d 1063, 1069 (8th Cir. 1996) ("[T]he removal statute only
> commands the state court to stay *the case that was actually removed* . . . ."
> (emphasis added)); *Lou v. Belzberg*, 834 F.2d 730, 740 (9th Cir. 1987) ("[A]
> federal court may enjoin the continued prosecution of *the same case* in state
> court after its removal." (emphasis added)). There simply is no language in
> the statute that reasonably can be interpreted as constraining the state
> court's authority over any case other than the case that was removed to
> federal court. Section 1446(d) may be self-acting, in that improper post-
> removal actions are void whether or not a court has so declared, . . . but it
> acts only within its reach.

*Ackerman*, 734 F.3d at 250 (emphasis in original). Regarding the Anti-Injunction Act's

"expressly authorized" exception in the case of removal, the Fourth Circuit stated:

> A federal statute expressly authorizes an injunction of state-court
> proceedings when the statute creates "a specific and uniquely federal right
> or remedy, enforceable in a federal court of equity, that could be frustrated
> if the federal court were not empowered to enjoin a state court proceeding."
> *Mitchum v. Foster*, 407 U.S. 225, 237, 92 S. Ct. 2151, 32 L.Ed.2d 705
> (1972). Section 1446(d), with its "proceed no further" directive, has
> generally been understood to expressly authorize injunctions of state courts
> ignoring that directive. *See id.* at 234 & n.12, 92 S. Ct. 2151; *Fulford v.
> Transport Servs. Co.*, 412 F.3d 609, 612 (5th Cir. 2005).
>
> Although this court has yet to address the issue, other courts have
> concluded that, under certain circumstances, § 1446(d) also authorizes
> injunctions against separate "copycat" actions—actions involving
> essentially the same parties and claims that are filed in state court after
> removal of the original action. *See Quackenbush v. Allstate Ins. Co.*, 121
> F.3d 1372, 1378 (9th Cir. 1997); *KPERS*, 77 F.3d at 1070–71; *Frith v.
> Blazon–Flexible Flyer, Inc.*, 512 F.2d 899, 901 (5th Cir. 1975); *see also
> Davis Int'l, LLC v. New Start Group Corp.*, 488 F.3d 597, 605 (3d Cir. 2007)
> ("Courts considering the question have unanimously held that a plaintiff's
> fraudulent attempt to subvert the removal statute implicates the 'expressly
> authorized' exception to the Anti–Injunction Act and may warrant the
> granting of an anti-suit injunction.").

As the Ninth Circuit has observed, "[i]t would be of little value to enjoin continuance of a state case after removal and then permit the refiling of essentially the same suit." *Lou*, 834 F.2d at 741. Accordingly, these courts have held that § 1446(d) authorizes the issuance of an injunction against separate, state-court copycat proceedings commenced for the purpose of subverting federal jurisdiction over a removed case. *See, e.g.*, *KPERS*, 77 F.3d at 1069 ("[A]fter removal the plaintiff cannot file essentially the same case in a second state action to subvert federal jurisdiction."); *Lou*, 834 F.2d at 741 ("[W]here a second state court suit is fraudulently filed in an attempt to subvert the removal of a prior case, a federal court may enter an injunction.").

*Id.* at 250–51. Finally, with regard to the discretionary nature of enjoining state court proceedings, the *Ackerman* court stated:

As discussed above, § 1446(d) invalidates post-removal actions taken in state court in the removed case, but it does not reach (and therefore does not invalidate) actions taken in cases other than the removed case. Section 1446(d) may serve as the statutory authority for an injunction against a separately filed copycat action, *see, e.g.*, *KPERS*, 77 F.3d at 1069, but serving as the source of authority for injunctions that might be issued from time to time is not the same as invalidating from the get-go every action that might someday be enjoined.

When an exception to the Anti–Injunction Act is present, a district court *may* issue an injunction, but it is not *required* to do so. Because "principles of comity, federalism, and equity always restrain federal courts' ability to enjoin state court proceedings," *In re Diet Drugs Prods. Liab. Litig.*, 369 F.3d 293, 306 (3d Cir. 2004), whether to enjoin state-court proceedings is always discretionary. *See Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 151, 108 S. Ct. 1684, 100 L.Ed.2d 127 (1988) ("Of course, the fact that an injunction may issue under the Anti–Injunction Act does not mean that it must issue. On remand the District Court should decide whether it is appropriate to enter an injunction."). As discussed above, § 1446(d) does not render void state-court actions taken in non-removed cases, and those actions may not be treated as if they were void simply because a district court might have elected to exercise its discretion to enjoin the state proceedings.

*Id.* at 252 (emphasis in original).

In the Injunction Order, this Court disagreed with a narrow conception of what could constitute a "state-court copycat proceeding commenced for the purpose of

subverting federal jurisdiction over a removed case," *see Ackerman*, 734 F.3 at 251, and found that "federal courts retain authority to enjoin State court proceedings, regardless of label, that risk 'subverting federal removal jurisdiction,' *see* [*KPERS*], 77 F.3d at 1069, whether or not those proceedings come in the form of 'later filed cases.'" (*See* ECF No. 105 at 22.) The Court stated:

> [T]he reasoning that supports application of the removal exception to the Anti-Injunction Act—to wit, preservation of federal removal jurisdiction itself—applies with equal force whether the State court proceeding that threatens to undermine federal jurisdiction is a later filed case, a status conference in a preexisting case, the adoption of a proposed order in a preexisting case, or any other 'proceeding' that one might imagine. It is the nexus between the substantive issues pending in federal court and the issues sought to be adjudicated in State court that controls, not the label placed on, or timing of, the State court proceeding.

(*Id.*) The Court "decline[d] to issue a broad moratorium on . . . proceedings that implicate the Insurers in the Receivership Court, because to do so would constitute overreach of this Court's equitable powers," and "decline[d] to descend into the particulars of precisely which documents and what information, if any, the Insurers have improperly withheld from the Receiver, because those particulars are squarely the province of Justice Toal in asbestos actions over which this Court has no jurisdiction." (*See* ECF No. 105 at 22–23.) However, the Court stated:

> [T]he Receiver cannot use the Receivership Court as a mechanism to indirectly force the Insurers to stake out litigation positions integral to coverage issues pending before the undersigned and to indirectly coerce the production of discovery information relevant to issues pending here but not in the Receivership Court. The Court finds that the Receiver's efforts in this regard have indeed threatened to undermine the Court's removal jurisdiction.

(*See id.* at 23–24 (itemizing the Receiver's contemporaneous efforts in the Receivership Court and the Receiver's petition for a counter-writ of certiorari filed with the Supreme

Court of South Carolina seeking rulings on coverage issues relevant to the universe of asbestos claims).) Therefore, the Court found it proper, "as both expressly authorized by an Act of Congress and necessary in aid of its jurisdiction, to enjoin the Receiver from further pursuing judicial determinations in underlying state tort suits regarding insurance coverage issues arising from policies issued or allegedly issued to Covil by the Insurers." (*Id.* at 25.)

In issuing the injunction, the Court erred by (a) exceeding the bounds of the "expressly authorized" exception to the Anti-Injunction Act, (b) finding that certain efforts by the Receiver to litigate coverage issues in state-court proceedings were the equivalent of a "copycat" action commenced for the purpose of subverting federal jurisdiction over a removed case, and (c) implicitly finding that an injunction was mandatory rather than discretionary.

First, the Court's injunction impermissibly expanded the "expressly authorized" exception to the Anti-Injunction Act. *Ackerman* repeatedly instructs that § 1446(d) invalidates post-removal state court proceedings *only in the removed case* and discusses expressly authorized injunctions only in the context of the removed case itself and "copycat" actions filed after removal. 734 F.3d at 250–51 (stating that § 1446(d) "speaks only in terms of the removed case," "restricts the state court's actions only as to the removed case," and contains "no language . . . that reasonably can be interpreted as constraining the state court's authority over any case other than the case that was removed to federal court"). This Court's statements in the Injunction Order about differing forms that a litigant's efforts to undermine federal jurisdiction might take (*see* ECF No. 105 at 22) were fueled by its concern that ongoing attempts to resolve overlapping

coverage *issues* in state court could be the functional equivalent of filing a fraudulent "copycat" *case*. That concern was misplaced. The Court's injunction exceeded the bounds of what is authorized by § 1446(d), specifically by enjoining not just the removed action, and not just a putative "copycat" action, but *all* state proceedings (across numerous *cases*) that implicate coverage issues overlapping with those pending here. This clearly violates the principles set forth in *Ackerman*.

The breadth of the injunction is not only impermissible under law, but situationally untenable. Covil's insurance policies, the nature of its coverage, and the conduct of its insurers have been, and are, properly before the state courts of South Carolina. There are more than two dozen suits in which Covil has been sued as a defendant, allegedly liable to the underlying state court plaintiffs for asbestos-related bodily injury. The Court is informed that in many of these suits, one or more insurance companies issuing policies to Covil have also been named as defendants. Certain Covil insurers have been sued by the underlying tort suit plaintiffs as the "alter ego" of Covil, based on findings made by the Receivership Court that between 1991 (when Covil ceased to operate) and November 2, 2018 (when the Receiver was appointed), Covil's affairs were managed by its primary insurers, including USF&G. (*See, e.g.*, ECF No. 109-3 (complaint in *Reilly v. Covil Corp., et al.*, pending in the Richland County Court of Common Pleas).) Also, in many of the asbestos personal injury cases where Covil and its insurers are party defendants, Covil has asserted crossclaims against the insurers, including USF&G, avering they are responsible for any liability that Covil might have in the underlying tort suits, alter ego claims, and other claims. In the interim since issuing the Injunction Order, this Court remanded the Finch Action and *Protopapas v. Wall Templeton & Haldrup PA, et al.*, No.

3:19-cv-01635-BHH (D.S.C. June 1, 2020) ("Protopapas Action"), ECF No. 63, both of which present coverage issues that directly overlap with the instant case. Moreover, the Receiver was appointed by and reports to a South Carolina state court, the Receivership Court, and has an obligation to carry out his appointed duties, which include advocating on Covil's behalf regarding the coverage issues regardless of forum. Suffice it to say, this constellation of circumstances makes it impossible for the Receiver to both comply with the Court's injunction and timely pursue Covil's coverage-related claims and defenses in all of the state court actions for which he is responsible, and over which this Court has no jurisdiction. Thus, the Court's injunction was impermissibly broad and not "expressly authorized" by the removal statute.

Second, the Court's Injunction Order erred by finding that the Receiver's ongoing efforts to litigate coverage issues in state court threatened to undermine the Court's removal jurisdiction and were therefore equivalent to a "copycat" action intended to subvert federal jurisdiction. (*See* ECF No. 105 at 22.) This second point of error is closely related to the first, but it nonetheless bears explanation in order to delineate error in the Court's statement about the reasoning for an injunction: "It is the nexus between the substantive *issues* pending in federal court and the *issues* sought to be adjudicated in [s]tate court that controls . . . ." (*See id.* (emphasis added).) The Fourth Circuit has held that overlapping jurisdiction is permissible, even where federal and state actions involve the same parties, have similar claims, and draw on the same operative facts: "Despite what may appear to result in a duplication of judicial resources, the rule is well recognized that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *McLaughlin v. United Va. Bank*, 955

F.2d 930, 934 (4th Cir. 1992) (holding that federal court action by sole stockholder of corporation and its subsidiaries against three banks was not totally duplicative of pending state court actions involving the same parties, and trial court should not have abstained under *Colorado River* doctrine) (internal quotation marks, citation, and alteration omitted). The U.S. Supreme Court has stated that "parallel *in personam* actions" do not "interfer[e] with the jurisdiction of either court." *Vendo Co. v. Lektro–Vend Corp.*, 433 U.S. 623, 642 (1977) (plurality opinion) (citing *Kline v. Burke Construction Co.*, 260 U.S. 226 (1922)). In *Kline*, the Supreme Court approved of parallel litigation in state and federal court when "the two cases presented substantially the same issues, the only differences being those resulting from the addition of [defendant parties] in the [state-court] equity suit." 260 U.S. at 228. The *Kline* court stated:

> [A]n action brought to enforce [a personal] liability does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending. Each court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court. Whenever a judgment is rendered in one of the courts and pleaded in the other, the effect of that judgment is to be determined by the application of the principles of res adjudicata . . . .

260 U.S. at 230.

A similar situation arose in *Atlantic Coast Line R. Co. v. Bhd. of Locomotive Engineers*, 398 U.S. 281 (1970). In that case, a labor union of locomotive engineers ("BLE") began picketing a railroad yard and the railroad company ("ACL") went to federal court seeking an injunction. The federal judge denied the request and ACL immediately went to state court and succeeded in obtaining an injunction in 1967. Two years later (1969) in an unrelated case, the Supreme Court held that railroad worker unions (including BLE) had a federally protected right to picket under the Railway Labor Act, and

that right could not be interfered with by state court injunctions. Based on that ruling, BLE filed a motion to dissolve the injunction that ACL had obtained in state court. The state court judge refused to dissolve the injunction, holding that the new Supreme Court ruling was not controlling. Instead of appealing that decision directly, BLE went back to the federal court and requested an injunction against the enforcement of the state court injunction. The district court judge granted a federal injunction and the parties' stipulation led to expedited review in the Supreme Court. The *Atlantic Coast* court held that the federal injunction was not proper either "to protect or effectuate" the federal court's original denial of an injunction in 1967, or as "necessary in aid of" the federal court's jurisdiction. Accordingly, the *Atlantic Coast* court invalidated the federal injunction under the Anti-Injunction Act, vacated and remanded. 398 U.S. at 283–285, 297. Addressing BLE's contention that the state court injunction interfered with the federal right established by the Supreme Court's 1969 decision and that a federal injunction was therefore "necessary in aid of [the district court's] jurisdiction," the *Atlantic Coast* court stated:

> First, a federal court does not have inherent power to ignore the limitations of [28 U.S.C.] s 2283 and to enjoin state court proceedings merely because those proceedings interfere with a protected federal right or invade an area preempted by federal law, even when the interference is unmistakably clear. This rule applies regardless of whether the federal court itself has jurisdiction over the controversy, or whether it is ousted from jurisdiction for the same reason that the state court is. This conclusion is required because Congress itself set forth the only exceptions to the statute, and those exceptions do not include this situation. Second, if the District Court does have jurisdiction, it is not enough that the requested injunction is related to that jurisdiction, but it must be 'necessary in aid of' that jurisdiction. While this language is admittedly broad, we conclude that it implies something similar to the concept of injunctions to 'protect or effectuate' judgments. Both exceptions to the general prohibition of s 2283 imply that some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case. Third, no such situation is presented here. Although the federal court

did have jurisdiction of the railroad's complaint based on federal law, the state court also had jurisdiction over the complaint based on state law and the union's asserted federal defense as well. While the railroad could probably have based its federal case on the pendent state law claims as well, it was free to refrain from doing so and leave the state law questions and the related issue concerning preclusion of state remedies by federal law to the state courts. Conversely, although it could have tendered its federal claims to the state court, it was also free to restrict the state complaint to state grounds alone. *In short, the state and federal courts had concurrent jurisdiction in this case, and neither court was free to prevent either party from simultaneously pursuing claims in both courts.*

*Id.* at 294–95 (emphasis added; internal citations omitted). All of this leads to the resounding conclusion that a federal court's jurisdiction is *not* threatened or undermined by parallel proceedings in state court, even if the issues being considered impact each other or are the same. If virtually identical cases may proceed in both state and federal court, *see Kline*, 260 U.S. at 232 ("[T]he rule [is] firmly established that the pendency in a federal court of an action in personam [is] neither ground for abating a subsequent action in a state court nor for the issuance of an injunction against its prosecution."), the Anti-Injunction Act *must* ensure that merely related state court cases should continue unabated by a federal court—even if the result in one forum will affect the other. *See Adkins v. Nestle Purina PetCare Co.*, 779 F.3d 481, 484 (7th Cir. 2015) ("Parallel state and federal litigation is common. The first to reach final decision can affect the other, either through rules of claim and issue preclusion . . . or through effects such as reducing the scope of a class from 50 to 49 states. Yet the potential effect of one suit on the other does not justify an injunction."). Thus, USF&G's fear that coverage-related decisions in the instant case will be affected by state-court decisions in other cases is no basis for invocation of the Anti-Injunction Act's exceptions, and the Court was wrong to find as much in the Injunction Order.

Third, the Court's analysis in the Injunction Order, both in tone and substance, assumed that an injunction was mandatory if the Court determined that its removal jurisdiction was under threat, whereas established law makes it clear that the decision whether or not to issue an injunction was always discretionary. *See Ackerman*, 734 F.3d at 252. Even if an exception to the Anti-Injunction Act applied here, which the Court finds is not the case, the Court would reconsider its decision to issue an injunction and exercise its discretion not to enjoin the Receiver in state-court proceedings. While it is true that Covil, acting through the Receiver, has initiated as plaintiff multiple suits against the insurer Defendants and other parties, it is also true that Covil, through no election of its own, is party defendant to a plethora of litigation that implicates coverage issues in state court. It would be manifestly unfair, and an inefficient use of judicial resources, to hamstring the Receiver by preventing him from advancing coverage-related claims, defenses, and crossclaims that are intricately connected to asbestos matters being expeditiously handled by the Receivership Court. The Court certainly wishes to avoid unwittingly creating a situation in which the Receivership Court is needlessly waiting on this Court to decide issues of South Carolina insurance law on which the Receivership Court has expertise, and this Court does not. Therefore, the Court finds that principles of comity, federalism, and equity all counsel away from the issuance of an injunction under the circumstances. *See In re Diet Drugs Prods. Liab. Litig.*, 369 F.3d 293, 306 (3d Cir. 2004) (vacating district court's injunction as overbroad and unduly entangling the court in the management of separate state court proceedings).

The permanent injunction issued by this Court on February 27, 2020 is hereby withdrawn as improvidently granted.

**B. Reconsideration of Remand**

In his motion to reconsider the Court's June 14, 2019 Order denying remand (ECF No. 67), the Receiver contends that the Court should abstain from exercising jurisdiction pursuant to *Trustgard Ins. Co. v. Collins*, 942 F.3d 195 (4th Cir. 2019). (*See* ECF No. 116.) *Trustgard* involved a claim brought pursuant to the Declaratory Judgment Act, which gives federal courts discretion to decide whether to declare the rights of litigants. 942 F.3d at 201. However, under controlling Fourth Circuit precedent, when a non-declaratory claim is properly before a district court, the court is "'not at liberty to abstain from entertaining the declaratory claims'" on a discretionary basis. *VonRosenberg v. Lawrence*, 781 F.3d 731, 734 (4th Cir. 2015), *as amended* (Apr. 17, 2015) (quoting *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 210 (4th Cir.2006)). This action is just such a "mixed case," involving both declaratory and non-declaratory claims. Thus, the more stringent abstention standard from *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), applies. The Receiver has not demonstrated the presence of "parallel actions" or "exceptional circumstances" to justify abstention pursuant to the *Colorado River* doctrine. *See Ackerman*, 734 F.3d at 248–49 (explaining that the threshold question in a *Colorado River* inquiry is whether the pending state and federal suits are parallel, and that the surrender of jurisdiction must be justified by exceptional circumstances). Accordingly, the motion to reconsider remand is denied.

**C. First Motion to Enforce Injunction**

In its first motion to enforce the Court's injunction, USF&G sought a finding that Covil acted in contempt of the injunction, an order directing Covil to withdraw any pleadings, papers, or submissions made in violation of the injunction, and an award to

USF&G of costs and fees. (ECF No. 142-1.) In addition, USF&G sought expedited briefing and expedited ruling on the motion. (*Id.*) The aim of USF&G's motion, filed on April 10, 2020, was to block approval by the Receivership Court of settlement agreements that three of Covil's insurers had recently entered into with the Receiver and which provided for the establishment of a qualified settlement fund ("QSF"). (*Id.* at 4–7.) USF&G was not a party to the proceedings in the Receivership Court but filed objections to the establishment of the QSF and to the Receivership Court's approval of the proposed settlements. USF&G argued that by entering into the settlement agreements the Receiver "gratuitously impair[ed] USF&G's rights under its insurance policy and s[ought] to expand its coverage obligations in the context of state-court tort actions in violation of the plain and unambiguous terms of this Court's injunction." (ECF No. 142-1 at 6–7.)

Also on April 10, 2020, the Receiver filed a notice with this Court that the Receivership Court had signed an Order Granting Joint Motions to Establish Covil Qualified Settlement Fund and to Approve Settlements Between the Receiver for Covil and (1) Hartford, (2) TIG, and (3) Sentry and to Keep Continuing Jurisdiction Over this Qualified Settlement Fund ("Settlement Approval Order"). (ECF No. 143.) In the Settlement Approval Order, Justice Toal specifically referenced the undersigned's Injunction Order and indicated her intent "to faithfully adhere to [the undersigned's] rulings and stay out of ruling on coverage matters that are before [the undersigned's] Court." (ECF No. 143-1 at 5.) A full review of the Settlement Approval Order reveals that it did not violate this Court's injunction in any way. (*See id.*)

Even suspending, for the moment, the fact that the Court has now reconsidered and withdrawn the injunction, USF&G's motion to enforce the injunction was moot on the

day it was filed because the Receivership Court entered the Settlement Approval Order that USF&G was trying to block. To be clear, USF&G made no showing that either the Receiver or the Receivership Court violated the injunction. The Court notes that the Receiver has been fastidiously transparent with this Court about proceedings in the Receivership Court and kept this Court fully apprised of relevant developments. In any event, USF&G's first motion to enforce the injunction is now doubly moot given the Court's current finding that the injunction was improvidently granted in the first instance. Accordingly, USF&G's motion is denied.

### D.  Second Motion to Enforce Injunction

In its second motion to enforce the injunction, USF&G sought a ruling from this Court that Covil violated the injunction by moving in the Finch Action (which the Court remanded in June 2020) for partial summary judgment on crossclaims seeking declarations on the same coverage issues pending before this Court. (*See* ECF No. 193-1.) USF&G requested the Court to require Covil to withdraw the filings, and to find Covil, its Receiver, and his counsel in contempt. (*Id.*)

USF&G's second motion to enforce the injunction, like the first, is now obviously moot. However, since the Receiver's motion for partial summary judgment in the Finch Action was filed before this Court withdrew the injunction, the Court would take a moment to clarify that the Receiver had a good faith basis to make the motion even though it clearly sought declarations on coverage issues pending before the undersigned. (*See* ECF No. 193-1 at 7–8 (itemizing parallel declaratory judgment claims by Covil against USF&G in this action and Covil's crossclaims against USF&G in the Finch Action).) The Court remanded both the Finch Action and the Protopapas Action without any indication

that the Receiver's declaratory judgment claims should not be heard, justifiably leading both the Receiver and Justice Toal to believe that the declaratory claims in those cases were subject to adjudication by the Receivership Court. (*See* ECF No. 195-6 at 14 (Receivership Court's September 15, 2020 order in the Protopapas Action denying USF&G's motion to dismiss and alternative motion to stay Covil's declaratory claims, stating that since the undersigned remanded both the Finch and Protopapas actions rife with coverage disputes, "there is no reason to belief [the undersigned] intended that [the Receivership Court] not adjudicate the Receiver's claims").) Accordingly, a finding that the Receiver knowingly violated the terms of the injunction would not have been appropriate. *See United States v. Ali*, 874 F.3d 825, 831 (4th Cir. 2017) (setting forth knowing violation of a court's valid decree as a necessary element for a finding of contempt). USF&G's second motion to enforce the injunction is denied.

## CONCLUSION

For the reasons stated, Covil's motion for reconsideration of the Injunction Order (ECF No. 109) is GRANTED and the injunction is withdrawn as improvidently granted. Covil's motion to reconsider the Court's prior ruling denying remand to state court (ECF No. 116), USF&G's first motion to enforce the Injunction Order (ECF No. 142), and USF&G's second motion to enforce the Injunction Order, for a finding of contempt, and for sanctions (ECF No. 193) are all DENIED.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

March 1, 2021
Greenville, South Carolina